**UNITED STATES of America, Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

**In re APPLICATION XXI BY THE INDEPENDENT ADMINISTRATOR.**

**No. 88 Civ. 4486 (DNE).**

United States District Court,
S.D. New York.

June 6, 1991.

92

Otto Obermaier, U.S. Atty., S.D.N.Y. (Edward T. Ferguson, III, Asst. U.S. Atty., of counsel), New York City, for U.S.

Charles M. Carberry, Investigations Officer of the Intern. Broth. of Teamsters, New York City (Robert W. Gaffey, of counsel), Ross & Hardies, New York City (Wm. Bradford Reynolds, William J. Rodgers, Thomas G. Olp., Philip S. Friedman, of counsel), for George Vitale.

## OPINION & ORDER

EDELSTEIN, District Judge.

This opinion emanates from the voluntary settlement in the action commenced by the plaintiff United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, and Investigations Officer to bring charges against corrupt IBT members, and an Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime.

Application XXI presents for this Court's review the opinion and supplemental opinion of the Independent Administrator (the "Vitale Decision") deciding the disciplinary charges brought by the Investigations Officer against IBT officer George Vitale. Vitale is an International Vice President on the GEB, the Secretary–Treasurer of the Central States Conference of Teamsters' Policy Committee, the Vice President of IBT Joint Council 43, Chairman of the Automobile, Petroleum and Allied Trades Division, and the President and Business Agent of IBT Local Union 283 in Michigan.

The Investigations Officer filed seven charges against Vitale. First, Vitale was charged with embezzling approximately $10,116.00 from Local 283 in violation of Article XIX, § 6(b)(3) of the IBT Constitution and 29 U.S.C. § 501(c). Second, Vitale was charged with attempting, while President of Local 283, to embezzle Local 283 property, a Lincoln Town Car, in violation of Article XIX, § 6(b)(1) and (3) of the IBT Constitution, § 16(c) of Local 283's By-laws, and 29 U.S.C. § 501(c). Based on this conduct, Vitale was also charged with violating his IBT membership oath at Article II, § 2(a) and Article XIX, § 6(b)(2) of the IBT Constitution by bringing reproach upon the IBT. Third, Vitale was charged with embezzling monies from Local 283 in violation of Article XIX, § 6(b)(3) of the IBT Constitution and 29 U.S.C. § 501(c) based on his criminal conviction for violating 29 U.S.C. § 501(c) by converting over $1,200 of Local 283's property to his own use. Fourth, Vitale was charged with breaching his fiduciary duties to the members of Local 283, and violating Article XIX, § 6(b)(2) of the IBT Constitution by violating his oath of office and bringing reproach upon the IBT based on his 1972 guilty plea to a violation of 29 U.S.C. § 186(b)(1). Fifth, Vitale was charged with aiding and assisting the unlawful solicitation of money from a convicted felon in violation of Vitale's fiduciary duties as a union officer, a violation of IBT Constitution Article II, § 2(a) and XIX, § 6(b), and in violation of 18 U.S.C. §§ 1954 and 2. The sixth charge filed by the Investigations Officer was withdrawn prior to the Independent Administrator's hearing. The seventh charge alleged that Vitale violated XIX, § 6(b) of the IBT Constitution by filing false and misleading Labor Organization Annual Reports.

The Independent Administrator determined that the Investigations Officer met his burden and demonstrated just cause that Charges One, Two, Three, Four, and Seven had been proved. The Independent Administrator determined that the Investigations Officer failed to meet his burden on Charge Five.

In appealing the Independent Administrator's decision, Vitale argues that: (1) he was denied a fair and impartial hearing; (2) his prior convictions do not bring reproach upon the union; (3) the Administrator's finding that Vitale violated § 16(c) of Local 283's By-laws is not supported by the record and is in error as a matter of law; (4) there is no evidence in the record to support the finding that Vitale fraudulently intended to embezzle funds; and (5) he did not violate his fiduciary duty, and thereby XIX § 6(b) of the IBT Constitution, by filing an incorrect Labor Organization Annual Report. Vitale does not challenge the supplemental opinion.

For reasons to be discussed, the opinion and the supplemental opinion of the Independent Administrator are affirmed in all respects.

## I. Standard of Review

It is well settled that with respect to the disciplinary provisions of the Consent Decree, the Investigations Officer and the Independent Administrator are stand-ins for the General President and the GEB, who properly delegated their disciplinary power to those Court Officers pursuant to Article XXVI, § 2 of the IBT Constitution. *United States v. Int'l Brotherhood of Teamsters*,[1] 931 F.2d 177, 184 (2d Cir.1991); *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d 610, 622 (2d Cir.1990); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 799–800 (S.D.N.Y.1991); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92

(S.D.N.Y.1990); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990); March 13, 1990 Opinion & Order, 743 F.Supp. 155, 159–60 (S.D.N.Y.), *aff'd*, 905 F.2d at 622; January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, *aff'd*, 907 F.2d 277 (2d Cir.1990); November 2, 1989 Memorandum & Order, 725 F.Supp. 162, 169 (S.D.N.Y.1989); *Joint Council 73 et al. v. Carberry et al.*, 741 F.Supp. 491, 493 (S.D.N.Y.1990). Hearings conducted before the Independent Administrator are conducted pursuant to the same standards applicable to labor arbitration hearings. (Consent Decree, ¶ F.12.(A)(ii)(e)).

Paragraph F.12.(C) of the Consent Decree mandates that the Independent Administrator must decide disciplinary hearings using a "just cause" standard. (Consent Decree at 9). Paragraph K.16 provides that this Court shall review actions of the Independent Administrator using the "same standard of review applicable to review of final federal agency action under the Administrative Procedures Act." (Consent Decree at 25). This Court will overturn findings of the Independent Administrator when it finds that they are, on the basis of all the evidence, "arbitrary or capricious." May 9, 1991, Memorandum & Order, at 800; December 28, 1990 Opinion & Order, 753 F.Supp. 1181, 1185 (S.D.N.Y.1990); December 27, 1990 Opinion & Order, 754 F.Supp. at 337; September 18, 1990 Opinion & Order, 745 F.Supp. at 191–92; August 27, 1990 Opinion & Order, 745 F.Supp. at 911; March 13, 1990 Opinion & Order, 743 F.Supp. at 160. This Court and the Court of Appeals have interpreted ¶ K.16 to mean that decisions of the Independent Administrator "are entitled to great deference." *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d at 616, *aff'g*, March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y.1990).

## II. Discussion

### A. Fair and Impartial Hearing

■ Vitale argues that the Independent Administrator was incapable of giving him

---

1. This Court's opinions and memoranda filed in this case will be cited by first referring to the date they were filed and then their official citation. Court of Appeals decisions will be cited with reference to the case caption and appropriate official citation.

a fair and impartial hearing because of prejudicial spill-over resulting from the Independent Administrator's veto of the appointments of IBT member Jack B. Yager to the GEB and as director of the Central Conference of Teamsters. The Independent Administrator vetoed the Yager appointments based on his findings that they would further an act of racketeering, and contribute to the association of the IBT with La Cosa Nostra. *See* April 18, 1991 Opinion & Order, 761 F.Supp. 315, 320–21, Appendix (Letter-veto of the Independent Administrator) at 334–36. This Court affirmed the Independent Administrator's veto of the Yager appointments in all respects in its April 18, 1991 Opinion & Order. April 18, 1991 Opinion & Order, 761 F.Supp. 315 (S.D.N.Y.1991).

Vitale contends that the Independent Administrator's findings about the GEB in the Yager matter "necessarily predetermine" the Independent Administrator's findings with respect to Vitale. (Cross–Application ["Cr.–App."] at p. 16). Vitale also argues that in making the Yager determination, the Independent Administrator was confronted with a number of allegations about Vitale that he was not given an opportunity to rebut in his own case. According to Vitale, the Independent Administrator "could not have helped but take these allegations into consideration." (Cr.–App. at 7).

Vitale does not argue that the record in his hearing contains any specific instances of bias or prejudice by the Independent Administrator. Rather, cognizant of the fact that the record is barren of any indication that the Independent Administrator was biased or prejudiced against Vitale in any way, Vitale's argument is directed at the powers delegated to the Independent Administrator. He argues that because the Independent Administrator has many responsibilities under the Consent Decree in addition to disciplinary matters, he cannot perform his adjudicative function without bias or prejudice. There is no basis whatsoever to support this wild argument.

Vitale's internal disciplinary hearing was presided over by the General President's stand-in, the Independent Administrator. The Independent Administrator's powers are specifically enumerated in the Consent Decree and are a subset of those of the IBT General President under the IBT Constitution. *See United States v. Int'l Brotherhood of Teamsters*, 905 F.2d at 618. The Consent Decree provides that the Independent Administrator, as a stand-in for the IBT General President, is empowered to perform many functions, including the power to veto appointments and decide disciplinary matters. (Consent Decree at ¶ 12(A) & (B)(iii)). The General President's power to carry out these functions is found in Articles X and XI of the IBT Constitution. It is baseless to contend that these responsibilities prevent the Independent Administration or the General President from finding facts impartially and objectively in disciplinary matters.

Under the IBT Constitution, the only ground for removing a hearing officer is that officer's involvement in the matter under review. (IBT Constitution, Art. XIX § 5). There is not one scintilla of evidence or even a bare allegation that the Independent Administrator was in any way involved in the actions which form the bases of the charges brought against Vitale.

In sum, and at the risk of being redundant, the record clearly demonstrates that the Independent Administrator's decision was reached solely on the evidence before him, without fear, sympathy, bias or prejudice. Since the Independent Administrator's exercise of authority under one section of the Consent Decree in no way prejudices his exercise of authority under a different section of the Consent Decree, Vitale's claim that Independent Administrator's veto of Yager necessarily prejudiced him against Vitale is without merit and must be rejected.

**B. Reproach Upon the Union**

Charges III and IV arose out of Vitale's two prior felony convictions. Article II, § 2(a) of the IBT Constitution is the IBT membership oath and provides in relevant part that every IBT member shall "conduct himself or herself in a manner so as not to

bring reproach upon the union." Pursuant to Article XIX, § 6(b)(2) of the IBT Constitution, an IBT member can be disciplined for violating his oath either to the Local or International Union. Count III of the charges alleged that Vitale brought reproach upon the IBT by embezzling from his Local in violation of 29 U.S.C. § 501(c) for which he was convicted in 1973. Count IV charges that Vitale brought reproach upon the IBT by taking money from an employer of his local's members in violation of 29 U.S.C. § 186(b)(1) for which he was convicted in 1972.

Vitale argues that: (1) the Independent Administrator's determination that his prior convictions bring reproach upon the IBT is further evidence of bias against Vitale and reversible error; (2) the Double Jeopardy Clause prohibits the imposition of punishment for offenses for which he has already been tried, convicted and punished; (3) the convictions are too remote in time to be relied upon; and (4) the Independent Administrator erred by rejecting Vitale's defense under Article XIX, Section 3(d) of the IBT Constitution. Vitale's arguments are without merit.

### 1. Evidence of Bias

■ How often must it be said that IBT members may be disciplined for felony convictions? *See United States v. Int'l Brotherhood of Teamsters*, 905 F.2d at 620–23, *aff'g*, March 13, 1990 Opinion & Order, 743 F.Supp. at 165; December 27, 1990 Opinion & Order, 754 F.Supp. at 335; September 18, 1990 Opinion & Order, 745 F.Supp. at 191; August 27, 1990 Opinion & Order, 745 F.Supp. at 911. IBT members are collaterally estopped from contesting the underlying facts of their convictions in response to charges filed by the Investigations Officer. *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d 610 (2d Cir.1990), *aff'g*, March 13, 1990 Opinion & Order, 743 F.Supp. 155. Vitale was convicted of two labor racketeering crimes. He was thus estopped from contesting the facts underlying his convictions. The Independent Administrator found that these convictions brought reproach upon the IBT. (Vitale

Decision at 23). The facts of these convictions being undisputed, a rational fact finder could only have found that Vitale's conduct brought reproach upon the IBT. To argue that such a conclusion is evidence of bias savages reason. Indeed, Vitale's argument that these convictions do not bring reproach upon the IBT is an argument only a convicted felon holding union office would have the impudence to make. The Independent Administrator's finding was neither arbitrary nor capricious.

### 2. Double Jeopardy

■ Vitale argues that the Independent Administrator's imposition of sanctions for Charges III and IV violates the Double Jeopardy Clause of the fifth amendment to the United States Constitution. To support this argument, Vitale states that the Independent Administrator is an officer of the government and that disciplinary sanctions are punitive. This argument is completely contrary to law and reason.

It is well settled the Independent Administrator's disciplinary authority emanates directly from the powers of the General President and the GEB under the IBT constitution as amended by the Consent Decree. *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d at 618–619, *aff'g*, March 13, 1990 Opinion & Order, 743 F.Supp. 155; September 18, 1990, Opinion & Order, 745 F.Supp. 189, 191 (S.D.N.Y.1990). The Independent Administrator is not a government official, but was appointed pursuant to the Consent Decree with the consent of both parties to act as a stand-in for the IBT General President. May 13, 1991, Memorandum & Order, 764 F.Supp. 817; May 9, 1991, Memorandum & Order, at 801; January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1048–57, *aff'd*, 907 F.2d 277 (2d Cir.1990). How many more times can this be said?

The Consent Decree was entered into to rid the IBT of the hideous, pervasive, and destructive influence of organized crime. The Consent Decree embodies "a systematic mechanism to achieve reforms throughout the IBT." *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d

at 613, *aff'g*, March 13, 1990 Opinion & Order, 743 F.Supp. 155. The disciplinary goals under Article III are remedial, not punitive. These goals include protecting the image of the IBT, maintaining Union integrity, and fostering public confidence in the IBT. Accordingly, Vitale's argument is rejected.

### 3. Remoteness

■ Vitale further argues that his 1972 and 1973 convictions are too remote in time to bring reproach upon the union. In making this argument, Vitale relies on the policy found in ·Rule 609(b) of the Federal Rules of Evidence, which bars the introduction of convictions older than 10 years for the purpose of attacking the credibility of a witness unless the court determines in the interest of justice that the probative value of the conviction substantially outweighs its prejudicial effect. Fed.R.Evid. 609(b); *see United States v. Figueroa*, 618 F.2d 934, 942 n. 3 (2d Cir.1980). Further, Vitale contends that the Independent Administrator is barred by the doctrine of laches from disciplining Vitale now for alleged misconduct which the union has been aware of for years and never acted upon.

I find these arguments without merit. Paragraph D.5 of the Consent Decree [2] explicitly removed any statute of limitations for any actions taken by the Investigations Officer and the Independent Administrator. Both this Court and the Court of Appeals have specifically held that the Consent Decree does not impose any statute of limitations in disciplinary proceedings. November 2, 1989, Memorandum & Order, 725 F.Supp. 162, 166–67 (S.D.N.Y.1989), *aff'd*, 905 F.2d 610, 620 (2d Cir.1990). One purpose behind the removal of the statute of limitations was undoubtedly to allow the Investigations Officer to bring disciplinary charges against IBT officials who have violated their union oath by bringing reproach upon the union through past criminal acts. (Consent Decree, 4th and 5th WHEREAS clauses). Rule 609 of the Federal Rules of Evidence has no relevance to Vitale's internal IBT disciplinary proceeding. In any event, even if the policy underlying Rule 609 was analogous, in the interest of justice the probative value of Vitale's convictions for the purposes of determining whether Vitale has brought reproach upon the Union would substantially outweigh any prejudicial effect. Accordingly, Vitale's argument is rejected.

Vitale's laches argument is similarly misguided. Essentially, Vitale argues that if an IBT official was not disciplined for illegal conduct before the implementation of the Consent Decree, such an official should not be disciplined after the implementation of the Consent Decree. This would shield all corrupt IBT officials who engaged in illegal activity before the implementation of the Consent Decree from having charges filed against them by the Investigations Officer. Vitale's argument attempts to eviscerate the disciplinary provisions of the Consent Decree and subvert its purpose of ridding the IBT of the hideous influence of organized crime. To accept Vitale's argument is to guarantee that the long and pervasive corrupt history of the IBT would continue unabated. Accordingly, Vitale's argument is rejected.

### 4. Article XIX, Section 3(d) Defense

■ Vitale complains that the Independent Administrator incorrectly rejected his affirmative defense under Article XIX, § 3(d) of the IBT Constitution ("§ 3(d)") to Charges III and IV. Section 3(d) provides that an IBT elected official may not be disciplined for "activities or actions ... known generally by the membership" when

---

**2.** The pertinent part of ¶ D.5 provides:

> Section 6(a) of Article XIX ... shall be and is hereby amended to provide for a five (5) year period, running from the discovery of the conduct giving rise to the charge. This limitation period shall not apply to any actions taken by the Investigations Officer or the Independent Administrator.

Paragraph D.5 amended § 6(a) of the IBT Constitution. The pertinent portion of § 6(a) provides:

> Any charge based upon alleged misconduct which occurred more than one (1) year prior to the filing of such charge is barred and shall be rejected by the Secretary–Treasurer, except charges based upon the non-payment of dues, assessment and other financial obligations.

that official was last elected to his IBT post.[3] Judicial interpretation of § 3(d) has established that in order to invoke this affirmative defense, an official must demonstrate that the relevant membership "had conclusive knowledge" that he was "actually guilty of the conduct charged" when he was elected. May 9, 1991, Opinion & Order, at 801–02 (S.D.N.Y.1991); March 13, 1990 Opinion & Order, 743 F.Supp. 155, 166 (S.D.N.Y.), aff'd, 905 F.2d 610 (2d Cir. 1990). Charged officials who deny their conduct to the membership cannot invoke the § 3(d) defense. May 9, 1991, Opinion & Order, at 801–02 (S.D.N.Y.1991); March 13, 1990 Opinion & Order, 743 F.Supp. 155, 166 (S.D.N.Y.), aff'd, 905 F.2d 610 (2d Cir.1990); November 2, 1989 Memorandum & Order, 725 F.Supp. 162, 165 (S.D.N.Y.1989).

Vitale argues that it is incorrect to apply the conclusive knowledge standard to charged members who do not deny their conduct. The standard for applying § 3(d) is equally applicable to charged members who deny and who do not deny their conduct. Accordingly, the Independent Administrator applied the correct standard.

Vitale has still another fanciful argument. He claims that the Independent Administrator's finding with respect to his § 3(d) defense is clearly erroneous. The Independent Administrator listed the evidence, including exhibits presented by Vitale in support of this defense, and then considered whether Vitale satisfied his burden of establishing a § 3(d) defense. (Vitale Decision at 28–32). The Independent Administrator found that Vitale's evidence was not probative of relevant memberships' conclusive knowledge of Vitale's convictions. As a result, the Independent Administrator found that Vitale failed to establish a § 3(d) defense to Charges III and IV. (Vitale Decision at 29 & 32). This finding is neither arbitrary nor capricious.

## C. Local Union Bylaw § 16(c)

▮ The Independent Administrator found that Vitale attempted to violate Local 283 Bylaw § 16(c) ("§ 16(c)") and Article XIX, § 6(b)(1) of the IBT Constitution through his efforts in 1989 to take a newly purchased Lincoln Town Car from Local 283. Vitale claims that this finding is clearly erroneous and that the Independent Administrator erred in not giving deference to Vitale's suggested interpretation of § 16(c). Article XIX, § 6(b)(1) of the IBT Constitution prohibits a violation of a Local Union Bylaw provision. Section 16(c) provides in relevant part:

> The Local Union may provide its officers or representatives with automobiles upon authorization of the membership.... In such instances where the Local Union provides an automobile, title to the automobile shall remain at all times in the name of the Local Union.

Two months after Vitale's 1973 conviction under 29 U.S.C. § 501(c) for embezzling union property by significantly underpaying for a union car, Local 283's Executive Board, with Vitale voting, passed a resolution which would allow Vitale to receive the automobile he was using at the time if he left office for any reason including being forced to leave by virtue of a conviction. (Vitale Decision at 17).

Following his conviction, Vitale applied to the Parole Board to be relieved of his statutory bar to hold office. The Parole Board removed Vitale's statutory bar on December 20, 1974. In 1975, Vitale was appointed to fill the vacancy of the then retiring President of Local 283. On October 19, 1989, an election was held and Vitale lost his bid for President. At an Executive Board meeting on October 27, 1989, Vitale reported that pursuant to the 1973 resolution of the Executive Board, he ordered a new Lincoln Town Car and submitted the quote for the car to the Executive Board. Subsequently, Vitale was ad-

---

**3.** Section 3(d) provides in relevant part:
Charges against elective officers of the International Union or any subordinate body shall be limited only to those activities or actions occurring during their current term of office, and only those activities and actions occurring prior to their current term which were not then known generally by the membership of the International Union or the subordinate body in the case of an officer of the subordinate body.

vised by his attorney that the election results would be overturned and Vitale therefore cancelled the order for the car. The election results were overturned and Vitale assumed the presidency. (Vitale Decision at 17–19).

Vitale argues that as an officer of Local 283, his interpretation of a resolution of that local is entitled to deference. In that vein, Vitale contends that the 1973 resolution merely interpreted § 16(c) to authorize officers with more than 10 years of service to the Local to retain the automobile being driven by the officer upon his leaving office for any reason free of any obligation.

The Second Circuit determined that the Independent Administrator's powers include the power to interpret constitutional provisions that relate to "disciplining corrupt or dishonest IBT or IBT-affiliated officers, agents, employees or members." *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d at 619. Further, "the Independent Administrator's comprehensive right to review disciplinary charges of the GEB necessarily includes the final authority to determine what constitutes an offense subject to discipline under the IBT Constitution." *Id.*

In exercising this power, the Independent Administrator found that the language of Section 16(c) "can be no clearer— if the Local decides to purchase an automobile for the use of an officer, the Local shall always retain title to that automobile." (Vitale Decision at 21). Further, pointing to the fact that there are no qualifications placed on the prohibition in § 16(c), the Independent Administrator found that the 1973 resolution violates § 16(c). While Vitale may have relied on the 1973 resolution, the Independent Administrator found that reliance on an invalid resolution does not justify a violation of a Bylaw provision. This is especially so, the Independent Administrator concluded, when such a violation results in the diversion of Union funds or assets. (Vitale Decision at 21).

The Independent Administrator's interpretation of § 16(c) is inescapable. Further, The Independent Administrator's finding that Vitale attempted to violate Local Union Bylaw § 16(c) and Article XIX, § 6(b)(1) is neither arbitrary nor capricious.

D. The FICA payments

■ The Independent Administrator found that the Investigations Officer carried his burden with respect to Count I. Count I charged Vitale with taking money from Local 283 in 1987, 1988, and 1989 in violation of 29 U.S.C. § 501(c) and Article XIX, § 6(b)(3) of the IBT Constitution by having Local 283 pay his FICA tax when that obligation was fully satisfied by the International, of which Vitale was also an employee. Vitale argues that the Independent Administrator's findings that he acted with fraudulent intent is not supported by the record.

FICA is a set social security tax. Once a maximum is reached for the year, no other FICA obligation exists for an individual regardless of additional income. In 1982, when Vitale first became an employee of the International, he was notified by a letter from the then General Secretary–Treasurer that the International would pay his share of FICA. In January 1987, Local 283's Executive Board, of which Vitale is a member, passed a resolution providing that the Local would pay the FICA tax for all its employees. Previously, the Local had withheld FICA from the salaries of its employees, including the salaried members of the Local's Executive Board. In accordance with the 1987 resolution, the Local paid its employees share of FICA to the government in 1987, 1988 and 1989.

Title 29, United States Code, § 501(c), provides in relevant part:

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the monies, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Article XIX, § 6(b)(3) of the IBT Constitution subjects a union member to discipline

for embezzlement or conversion of union funds or property. In order to sustain a charge under § 501(c), the Investigations Officer had to prove that Vitale acted with fraudulent intent to deprive Local 283 of its funds. (Vitale decision at 9) (citing *United States v. Welch*, 728 F.2d 1113, 1118 (8th Cir.1984)). Despite Vitale's claim that he acted in good faith, the Independent Administrator found that "Vitale possessed the requisite fraudulent intent to deprive his Local of its funds when he accepted the FICA contribution from his Local knowing full well that the International was also making the same payments on his behalf." (Vitale Decision at 12). The Independent Administrator analogized Vitale's reimbursement of FICA payments from both the International and the Local to receiving payments for the same hotel bill from both the International and the Local and pocketing the difference. (Vitale Decision at 14).

The Independent Administrator found that Vitale's fraudulent intent was supported by the following: (1) Vitale did not make it known that he was receiving FICA contributions from the International at the time he agreed to receive FICA contributions from the Local; (2) Vitale had ample notice that "double-dipping" was unlawful and a violation of his fiduciary obligation; and (3) common sense indicates that the payment of the same expense by both the Local and the International is wrong. (Vitale Decision at 14). Vitale argues that none of these are supported by the record and therefore that the Independent Administrator's finding of Vitale's intent was arbitrary and capricious. In fact, these instances are fully supported by the record.

The minutes of the January 23, 1987, Local 283 Executive Board meeting, at which the FICA resolution was adopted, makes no mention of the fact that Vitale's FICA was already being paid by the International. (Investigations Officer Ex. B–10). The minutes accuracy with respect to this point is underscored by the Recording Secretary's testimony that he did not know Vitale's FICA was being paid for by the International. (Hearing at 202). Moreover, none of the local board members who testified said they knew at the time of the vote that Vitale was receiving FICA contributions from the International. After the hearing, Vitale was prepared to recall witnesses to testify on this point in order to show that the members of the Local Board knew he was receiving FICA contributions from the International. (Vitale Ex. S). Even if Vitale had not waived his opportunity to present evidence on this issue at the hearing, testimony that Local Board members knew that Vitale was already receiving FICA contributions from the International would not exculpate Vitale. Rather, it would only implicate those who testified in Vitale's scheme.

Vitale had ample notice that duplicate payments for the same thing was unlawful. In a letter from the International's General President, less than a year before the Local's FICA resolution, Vitale was warned not to accept payment from the Local for expenses the International paid and was specifically alerted that the Department of Labor had "advised that duplicate payments for convention-related expenses may constitute a violation of Section 501(c) of the Landrum–Griffin Act, a provision which carries criminal penalties." (Investigation's Officer Ex. B–15). After receiving such notice, Vitale should have been aware that the receipt of duplicate payments from the International and the Local for any expenses would be unlawful.

Moreover, Vitale's fiduciary duty in handling the Local's funds should have been indelibly burned in his memory after his 1973 conviction for embezzlement of the Local's funds. In fact, in affirming Vitale's conviction, the Sixth Circuit stated unequivocally that it "was the plain intention of Congress to hold officers and employees strictly responsible as fiduciaries for the union funds entrusted to them and this intention should not be subverted by the use of indirect methods." *United States v. Vitale*, 489 F.2d 1367, 1370 (6th Cir.1974) (quoting *United States v. Silverman*, 430 F.2d 106, 113 (2d Cir.1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971)).

Vitale also argues that the Independent Administrator ignored Article V, § 1(a) of the IBT Constitution which provides:

> The provisions for compensation and allowances contained in this entire Article shall be in addition to any compensation and allowances which may be received from subordinate entities.

Vitale argues that this provision precludes any discipline for the International's payment of FICA on Vitale's International salary. In exercising his interpretive power, the Independent Administrator found that the "in addition to" language can only be reasonably interpreted to mean "beyond that received" from a subordinate entity. (Vitale Decision at 15–16). As the Independent Administrator stated, to interpret the provision as Vitale suggests would "authorize International officers who also hold positions with subordinate entities to double dip at will." (Vitale Decision at 16). The Independent Administrator's rejection of Vitale's interpretation was neither arbitrary nor capricious.

The evidence relied upon by the Independent Administrator was more than sufficient to find that Vitale acted with fraudulent intent to deprive Local 283 of its funds. The Independent Administrator's finding that the Investigation's officer satisfied his burden with respect to this count is neither arbitrary nor capricious.

### E. The 1987 Labor Organization Annual Report ("LM–2") of Local 283

 The Independent Administrator found that the Investigations Officer satisfied his burden of proving that Vitale violated his fiduciary duty as the Secretary–Treasurer of Local 283 when he signed and caused a false Labor Organization Annual Report ("LM–2") to be filed for 1987. Vitale argues that this finding was arbitrary and capricious.

This violation relates back to the FICA contribution scheme. It is undisputed that the LM–2 filed by Local 283 for 1987 did not reveal that the Local was paying the FICA tax on behalf of its officers and employees. The LM–2 was the member-

ships' only source of information about the benefits the Local's officers awarded themselves. Vitale testified that he did not read or review the report before signing it and causing it to be filed with the Department of Labor. (Hearing at 109, 153).

While the Independent Administrator determined that the Investigations Officer failed to prove that the 1987 LM–2 was part of a larger scheme to conceal the FICA contribution plan from the local membership and the Department of Labor, he found that Vitale breached his fiduciary duty as an officer of Local 283 by not reading or reviewing the LM–2 before signing it. (Vitale Decision at 38). The Independent Administrator further stated that:

> As the Secretary–Treasurer of Local 283, and a signatory to the LM–2, Vitale must bear the responsibility for the contents of that document. He cannot skirt his responsibility by hiding behind bookkeeping and accounting errors.

(Vitale Decision at 38). The Independent Administrator's finding that Vitale breached his fiduciary duty in this instance is neither arbitrary nor capricious.

### III. Final Judgment and Stay

Vitale moves pursuant to Rule 54(b) of the Federal Rules of Civil Procedure to have this Court direct the entry of a final judgment on Application XXI. This Court denied a similar motion made by a disciplined IBT member in its March 28, 1991 Order. The Court's "power to enter a final judgment before the entire case is concluded, and thereby permit an aggrieved party to take an immediate appeal, [is to] be exercised sparingly." *Cullen v. Margiotta*, 811 F.2d 698, 710 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Accordingly, Vitale's motion is denied.

Vitale has also moved for a stay "in the event this court approves the Administrator's findings in Application XXI and thereafter certifies its order as a final judgment." (Memorandum in Support of Stay at 3). Given that Vitale's Rule 54(b) motion is denied, Vitale's motion for a stay is, by its own terms, moot. Accordingly, Vitale's

motion for a stay need not be reached by this Court.

### CONCLUSION

IT IS HEREBY ORDERED that Vitale's objections to the opinion are denied.

IT IS HEREBY ORDERED that the opinion and supplemental opinion of the Independent Administrator are affirmed in all respects.

IT IS HEREBY ORDERED that the stay of penalties imposed by the Independent Administrator is dissolved, effective immediately.

IT IS HEREBY ORDERED that Vitale's motion pursuant to Rule 54(b) of the Federal Rules of Civil Procedure is denied.

IT IS FURTHER ORDERED that Vitale's application for a stay is moot and need not be addressed.

SO ORDERED.