UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION LX OF THE INDEPENDENT ADMINISTRATOR.

No. 88 CIV. 4486 (DNE).

United States District Court, S.D. New York.

Jan. 16, 1992.

See also 782 F.Supp. 243.

---

**2.** The withdrawal scenario also creates issues of fact as to whether First City had notice of any defenses to the Notes.

Charles M. Carberry, Investigations Officers of Intern. Broth. of Teamsters.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Edward T. Ferguson, III, Asst. U.S. Atty., of counsel), for U.S.

O'Connor & Mangan, P.C., Long Island City, N.Y. (J. Kenneth O'Connor, of counsel), for respondents James E. McNeil and Michael J. Morris.

Reinhart & Schachter, P.C., Newark, N.J. (Paul Schachter, of counsel), for respondents James Buckley, Dominick Milano and David Morris.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions.

Application LX presents for this Court's review the opinion of the Independent Administrator finding that the Investigations Officer proved one charge filed against IBT members James McNeil, Michael Morris, Dominick Milano, James Buckley and David Morris. Respondents are former officers of IBT Local Union 707, located in Woodside, New York.[1]

---

1. The Independent Administrator held hearings in this matter on August 9, 1991 and September 17, 1991. Against the suggestion of the Independent Administrator, McNeil and M. Morris chose not to appear or participate in these hearings. Instead, by letter dated August 8, 1991, McNeil's and M. Morris' attorney stated that because his clients had retired and withdrawn from the IBT, the Independent Administrator had no jurisdiction to adjudicate these disciplinary charges. Nevertheless, by an exhibit attached to the August 8 letter and by a separate letter dated August 7, 1991, McNeil and M. Morris raised defenses to the charge. McNeil and M. Morris have also submitted to this Court a memorandum of law in opposition to the decision of the Independent Administrator. This

## I. BACKGROUND

The Investigations Officer alleges that respondents violated Article II, § 2(a) and Article XIX, §§ 6(b)(1), (2) and (5) of the IBT Constitution by knowingly associating with Nicholas Grancio, a member of La Cosa Nostra.[2] Section 2(a) is the IBT membership oath, which provides in relevant part that every IBT member shall "conduct himself or herself in a manner so as not to bring reproach upon the Union." Section 6(b) is a non-exhaustive list of disciplinary charges that may be filed against IBT members. Three such charges are violating the IBT oath, violating union rules and interfering with the union's legal or contractual obligations. *See* Article XIX, §§ 6(b)(1)–(2), (5).

The Independent Administrator found that the Investigations Officer had sustained his burden of proving that respondents "knowingly associated" with Grancio and had demonstrated "just cause"[3] that the charge had been proved. As a penalty for the Charge, the Independent Administrator found that respondents should be permanently banished from the IBT, stating that "[t]he IBT can never achieve its noble goal of becoming an organization free of corruption if men like these remain part of the organization." Ind.Admin.Dec. at 15. Furthermore, the Independent Administrator directed that no further contributions from the IBT or any IBT-affiliated entity be made on respondents' behalf to any employee benefit plans that the IBT or any IBT-affiliated entity either exclusively or partially controls. The Independent Administrator, however, permitted respondents to receive benefits that have already vested.

Respondents appeal to this Court the opinion of the Independent Administrator.

This Court finds that the opinion of the Independent Administrator is fully supported by the evidence, and that respondents' arguments are completely without merit. Accordingly, the opinion of the Independent Administrator is affirmed in all respects.

## II. DISCUSSION

Respondents contend that the evidence in this matter did not support the Independent Administrator's finding that respondents "knowingly associated" with Grancio. M. Morris and McNeil argue that they did not know of Grancio's ties to La Cosa Nostra. Buckley, Milano and D. Morris acknowledge their awareness of Grancio's connection with La Cosa Nostra, but assert that they did not purposefully associate with him. The Independent Administrator rejected these contentions.

The Independent Administrator found that M. Morris and McNeil knew of Grancio's ties to La Cosa Nostra. *See* Ind.Admin.Dec. at 5–7. For instance, in January 1991, M. Morris and McNeil appeared before the Independent Administrator in an unrelated union disciplinary matter.[4] At the hearing, the Investigations Officer introduced substantial reliable evidence of Grancio's illegal activities, thus alerting M. Morris and McNeil to Grancio's conduct. In addition, in connection with these prior disciplinary charges, McNeil and M. Morris testified in May 1990 that they had known of Grancio's involvement with La Cosa Nostra for at least five years. Moreover, each knew that the police had questioned Grancio concerning the murder of Local 707 member Bruno Bauer.

The Independent Administrator also found that respondents purposefully associ-

---

memorandum opinion will address their defenses, including their jurisdictional objection.

**2.** Grancio died from gunshot wounds on January 7, 1992, in what has been characterized in the press as an assassination connected with a continuing battle between separate factions of the Colombo family, which is part of La Cosa Nostra. *See* N.Y. Post, January 8, 1992, at 5, col. 1; N.Y. Times, January 8, 1992, at B6, col. 4.

**3.** Paragraph F.12(C) of the Consent Decree mandates that the Independent Administrator must decide disciplinary hearings using a "just cause" standard.

**4.** In a separate disciplinary matter, this Court suspended McNeil and M. Morris from the IBT for five years for embezzling and fraudulently converting Local 707 property. *See* October 9, 1991 Memorandum & Order, 777 F.Supp. 1123 (S.D.N.Y.1991).

ated with Grancio. *See* Ind.Admin.Dec. at 13–14. The Independent Administrator's opinion details Grancio's extensive contact with Local 707 generally, and respondents specifically, after his resignation from the Union. These contacts reveal that respondents "knowingly associated" with Grancio. For instance, after his resignation, Grancio visited the Union hall at least 32 times and respondents admittedly met with Grancio on many of these occasions. Grancio drank coffee in the Local's kitchen and seemed to be a fixture at the Union. Even though they knew of Grancio's ties to La Cosa Nostra, respondents never objected to his presence at the Union. On the contrary, McNeil asked Grancio to attend the Local 707 Shop Steward's breakfast on April 6, 1991 as a featured speaker, during which respondents sat on the dias with Grancio. Accordingly, based on these and other contacts, the Independent Administrator concluded that respondents knowingly associated with Grancio.

It is well settled that the findings of the Independent Administrator "are entitled to great deference." *United States v. Int'l Brotherhood of Teamsters,* 905 F.2d 610, 616 (2d Cir.1990), *aff'g* March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y. 1990). This Court will overturn findings when it determines that they are, on the basis of all the evidence, "arbitrary or capricious." *United States v. Int'l Brotherhood of Teamsters, supra,* 905 F.2d at 622; November 8, 1991 Memorandum & Order, 948 F.2d 1338, 1341–42 (S.D.N.Y.1991); November 8, 1991 Memorandum & Order, 948 F.2d at 1343 (S.D.N.Y.1991); October 29, 1991 Opinion & Order, 776 F.Supp. 144, 152–53 (S.D.N.Y.1991); October 25, 1991 Order, *slip opinion,* at 4 (S.D.N.Y.1991); October 24, 1991 Opinion & Order, 777 F.Supp. 1133, 1136 (S.D.N.Y.1991); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991); October 11, 1991 Memorandum & Order, 777 F.Supp. 1127, 1128 (S.D.N.Y.1991); October 9, 1991 Memorandum & Order, 777 F.Supp. 1123, 1125 (S.D.N.Y.1991); August 14, 1991 Memorandum & Order, *slip opinion,* at 4 (S.D.N.Y.1991); July 31, 1991 Memorandum & Order, 138 F.R.D. 50, 51 (S.D.N.Y. 1991); July 18, 1991 Memorandum & Order, *slip opinion* at 3–4, 1991 WL 136030 (S.D.N.Y.1991); July 16, 1991 Opinion & Order, *slip opinion,* at 3–4, 1991 WL 136029 (S.D.N.Y.1991); June 6, 1991 Opinion & Order, 775 F.Supp. 90, 93 (S.D.N.Y. 1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y. 1991); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 800 (S.D.N.Y.1991); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92 (S.D.N.Y.1990); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990); March 13, 1990 Opinion & Order, *supra,* 743 F.Supp. at 159–60, *aff'd,* 905 F.2d at 622; January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, *aff'd,* 907 F.2d 277 (2d Cir.1990); November 2, 1989 Memorandum & Order, 725 F.Supp. 162, 169 (S.D.N.Y.1989).

The record amply supports the Independent Administrator's finding. His opinion contains extensive evidence that respondents knew of Grancio's La Cosa Nostra connections and that they nonetheless chose to associate with him. Respondents' arguments to the contrary strain belief. While respondents attempt to minimize the significance of their admitted contacts with Grancio at the Union, this Court believes that such contacts are never without significance. By tolerating and even encouraging Grancio's continued presence at the Union hall, respondents sent a message to all IBT members that La Cosa Nostra's influence is welcome in their Union. The IBT will not rid itself of La Cosa Nostra's hideous influence if Union officers casually sip coffee and present as a featured speaker a person who is widely known to be a senior member of organized crime. Accordingly, this Court finds that the Investigation Officer established just cause for finding that respondents knowingly associated with Grancio. The Independent Administrator's finding was not arbitrary or capricious.

██ McNeil and M. Morris also argue that the Independent Administrator had no

jurisdiction to adjudicate the charge filed against them because they had retired and withdrawn from the IBT before the Independent Administrator rendered a decision in this matter. This Court has held that the Independent Administrator may adjudicate disciplinary charges against IBT members who withdraw from the Union after the filing of charges. *See* September 19, 1990 Opinion & Order, 745 F.Supp. 189, 193 (S.D.N.Y.1990). Furthermore, the IBT Constitution permits the filing of disciplinary charges against members who withdraw from the Union. *See* IBT Const. Art. XIX, § 1(f).

McNeil's and M. Morris' attempt to divest the Independent Administrator of jurisdiction is based on an obvious misapplication of federal labor law. In *NLRB v. Granite State Joint Board*, 409 U.S. 213, 217, 93 S.Ct. 385, 387, 34 L.Ed.2d 422 (1972), the Supreme Court held that "[w]here a member lawfully resigns from a union and thereafter engages in conduct which the union rule prescribes, the union commits an unfair labor practice when it seeks to [punish] that conduct." *See NLRB v. Oil, Chem. & Atomic Workers Int'l Union, Local 6–578*, 619 F.2d 708, 713 (8th Cir.1980) (union could not punish former union members for post-resignation conduct). These cases, however, do not prevent a union from punishing members for pre-withdrawal conduct. Post-charge withdrawals do not in any way diminish the Independent Administrator's adjudicatory authority. Because respondents knowingly associated with Grancio before they resigned from the IBT, the Independent Administrator had jurisdiction to hear disciplinary charges against them.

■■■ McNeil and M. Morris next argue that the Independent Administrator's decision and the Investigation Officer's case rested primarily upon hearsay evidence. McNeil and M. Morris allege that it is not proper to consider hearsay evidence in disciplinary proceedings. The Independent Administrator's decision does consider hearsay statements made by FBI agent Brian F. Taylor. Ind.Admin.Dec. at 5. Hearsay evidence, if reliable, is admissible in IBT disciplinary proceedings. *See United States v. IBT*, 745 F.Supp. 908, 914–15 (S.D.N.Y.1990), *aff'd*, 941 F.2d 1292, 1297 (2d Cir.1991).

The Independent Administrator carefully considered Agent Taylor's hearsay statements and found them reliable. While Agent Taylor did not testify on direct examination, counsel for Buckley, Milano and D. Morris did cross-examine him. Undoubtedly, counsel for McNeil and M. Morris could also have cross-examined Agent Taylor had counsel and counsel's clients chosen to appear at the hearing. In addition, Agent Taylor has been a Special Agent with the FBI for over fifteen years, and he has investigated organized crime activities for over fourteen of those years. Moreover, Agent Taylor's statements contain detailed descriptions of the structure of La Cosa Nostra, Grancio's ties with La Cosa Nostra and respondents' relationship with Grancio. Having examined the hearsay statements in light of Agent Taylor's background and expertise in this area, this Court agrees with the Independent Administrator that Agent Taylor's hearsay statements are reliable. Accordingly, this Court rejects McNeil's and M. Morris' argument.

The Independent Administrator's decision was supported by ample evidence and was neither arbitrary nor capricious. Respondents' arguments are wholly without merit. Accordingly, the decision of the Independent Administrator is affirmed in all respects.

### III. CONCLUSION

IT IS HEREBY ORDERED that respondents' objections to the Independent Administrator's opinion are denied;

IT IS FURTHER ORDERED that the opinion of the Independent Administrator is affirmed in all respects.

SO ORDERED.