**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

**In re APPLICATION LXXVIII of the INDEPENDENT ADMINISTRATOR.**

No. 88 CIV. 4486 (DNE).

United States District Court,
S.D. New York.

July 9, 1992.

Charles M. Carberry, Investigations Officer of Intern. Broth. of Teamsters (Paul D. Kelly, of counsel).

Otto G. Obermaier, U.S. Atty. S.D.N.Y. (Steven C. Bennett, Asst. U.S. Atty., of counsel), for U.S.

David F. DuMouchel, P.C., Detroit, Mich. (David F. DuMouchel, of counsel), for David L. Reardon.

## OPINION & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiff United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The Consent Decree provides for three Court-appointed officials: the Independent Administrator to oversee the Consent Decree's remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and disciplinary provisions.

Application LXXVIII presents for this Court's review the decision of the Independent Administrator regarding disciplinary charges brought by the Investigations Officer against David L. Reardon ("Reardon"), Secretary–Treasurer of IBT Local 563 in Appleton, Wisconsin. The Independent Administrator found that Reardon was part of a scheme to embezzle funds from Local 563

and brought reproach upon the IBT by taking part in the scheme.

## I. BACKGROUND

The Investigations Officer brought two charges against Reardon. Charge One alleged that Reardon brought reproach upon the IBT by giving false testimony under oath in the criminal trial of Local 563's then Secretary–Treasurer, Dennis Vandenbergen ("Vandenbergen"), who was convicted in 1990 of using Local 563 money to make illegal campaign contributions. Charge Two alleged that Reardon embezzled funds from his Local in connection with the illegal campaign contribution scheme created by Vandenbergen, and brought reproach upon the IBT by doing so.

Pursuant to paragraph F.12(C) of the Consent Decree, the Independent Administrator must decide disciplinary hearings using a "just cause" standard. The Investigations Officer has the burden of establishing just cause by a preponderance of the evidence. December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990). After conducting a hearing where Reardon was represented by counsel and receiving post-hearing briefs, the Independent Administrator issued a twenty page decision. The Independent Administrator found that the Investigations Officer failed to meet his burden of proving Charge One, but met his burden of proving Charge Two. Neither Reardon nor the Investigations Officer object to the Independent Administrator's finding with respect to Charge One.[1] Reardon, however, challenges the Independent Administrator's finding with respect to Charge Two.

Charge Two implicates Article II, Section 2(a) and Article XIX, Section 6(b) of the IBT Constitution. Article II, Section 2(a) is the IBT membership oath, which provides in relevant part that every IBT member shall "conduct himself or herself in a manner so as not to bring reproach upon the Union." Article XIX, Section 6(b) is a non-exhaustive list of disciplinary charges that may be filed against IBT members. One such charge is violating the IBT membership oath. See Article XIX, § 6(b)(2). Another such charge is the embezzlement or conversion of IBT funds or property. See Article XIX, § 6(b)(3).

### A. The Illegal Campaign Contribution Scheme

In 1990, Vandenbergen, then Secretary Treasurer of Local 563, was convicted in the United States District Court for the Southern District of Wisconsin with conversion of Union funds to the benefit of a local political campaign on behalf of mayoral hopeful Dorothy Johnson ("Johnson") in violation of, inter alia, 29 U.S.C. § 501(c). Knowing that union funds could not be used for campaign contributions pursuant to Wisconsin law, Vandenbergen implemented a money-laundering scheme to use Local 563's funds for contributions to Johnson's campaign. At a March 9, 1988, meeting of Local 563's Executive Board (the "March 9th Meeting"), Vandenbergen had the Executive Board members vote themselves each a $300 "bonus." The bonuses were then used by the Executive Board members to make individual contributions to Johnson's campaign; each contribution was $300.

While Reardon was a member of Local 563's Executive Board, he was not present at the March 9th Meeting. Most Executive Board members physically exchanged their personal contribution checks for their bonus checks. Reardon, however, received his bonus check for $300 on March 31, 1988, and wrote a $300 personal check to the Johnson campaign on or about April 5, 1988. On or about April 8, 1988, Reardon cashed his bonus check.

### B. The Independent Administrator's Findings Regarding Reardon's Involvement in the Scheme

It is well settled that "fraudulent intent to deprive [the Union] of its funds" is re-

---

1. On Charge One, the Independent Administrator found that Reardon did not *willfully* give false testimony at Vandenbergen's trial. Rath-er, the Independent Administrator found that Reardon acted recklessly or negligently, both of which are insufficient to sustain the charge.

quired to sustain a charge of embezzlement. June 6, 1991 Opinion & Order, 775 F.Supp. 90, 98 (S.D.N.Y.1991), *aff'd, in relevant part, U.S. v. IBT,* 948 F.2d 1278 (2d Cir.1991). Such intent can be inferred from circumstantial evidence. *United States v. Local 560,* 780 F.2d 267, 284 (3d Cir.1985). The Independent Administrator found that "Reardon participated in Vandenbergen's scheme to funnel the Local's funds to a political campaign and in doing so he acted with 'fraudulent intent to deprive [local 563] of its funds.' " (Decision of the Independent Administrator ("Ind.Admin.Dec.") at 10).

The Independent Administrator stated that although Reardon did not attend the March 9th Meeting, he did "receive a $300 bonus which was eventually funnelled" to Johnson's campaign. *Id.* at 16. In addition, the Independent Administrator found that even though Reardon did not physically exchange a campaign check for a bonus check like the other members of the Executive Board, the amount of the "bonus" was " 'integrally and inextricably intertwined' " with his contribution to the Johnson campaign. *Id.* Accordingly, the Independent Administrator found that Reardon participated in the illegal campaign scheme and thereby embezzled Union funds and brought reproach upon the IBT.

As a penalty, the Independent Administrator found suspension from the IBT appropriate for Reardon's violations of the IBT Constitution. In imposing a two year suspension, the Independent Administrator considered a number of mitigating factors, including that Reardon did not conceive of the scheme and that the amount involved is only $300. The Independent Administrator also imposed sanctions upon Reardon's employee benefits. *See* December 28, 1990 Memorandum & Order, 753 F.Supp. 1181 (S.D.N.Y.1990), *aff'd,* 941 F.2d 1292 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991). The Independent Administrator stayed the imposition of penalties pending this Court's review.

This application followed.

## II. DISCUSSION

Respondent argues that the Independent Administrator's finding with respect to Charge Two is incorrect and should be vacated. In the alternative, Reardon argues that the penalty imposed is too severe. In addition, Reardon has applied for a stay should this Court affirm the Independent Administrator.

### A. The Merits

■ Reardon attempts to reargue the evidence presented to the Independent Administrator. It is now well settled that the findings of the Independent Administrator "are entitled to great deference." *United States v. IBT,* 905 F.2d 610, 616 (2d Cir. 1990), *aff'g* March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y.1990). This Court will overturn the findings of the Independent Administrator when it determines that they are, on the basis of all the evidence, "arbitrary or capricious." *United States v. IBT,* 964 F.2d 1308, 1311 (2d Cir.1992); *see* May 15, 1992 Opinion & Order, 792 F.Supp. 1346, 1352 (S.D.N.Y.1992); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990), *aff'd,* 941 F.2d 1292 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991); March 13, 1990 Opinion & Order, 743 F.Supp. 155, 165 (S.D.N.Y.1990), *aff'd,* 905 F.2d 610 (2d Cir.1990); *see* April 27, 1992 Memorandum & Order, 791 F.Supp. 421, 425 (S.D.N.Y.1992); February 11, 1992 Memorandum & Order, 787 F.Supp. 345, 350 (S.D.N.Y.1992); January 20, 1992 Memorandum & Order, 782 F.Supp. 256, 259 (S.D.N.Y.1992); January 16, 1992 Memorandum & Order, 782 F.Supp. 238, 241 (S.D.N.Y.1992); November 8, 1991 Memorandum & Order, *slip opinion,* at 4–5, 1991 WL 243268 (S.D.N.Y.1991); October 29, 1991 Opinion & Order, 776 F.Supp. 144, 152–53 (S.D.N.Y.1991), *aff'd,* 954 F.2d 801 (2d Cir.1992); October 25, 1991, Order, *slip opinion,* at 4–5 (S.D.N.Y.1991); October 24, 1991 Memorandum & Order, 777 F.Supp. 1133, 1136 (S.D.N.Y.1991); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991), *aff'd,* 964 F.2d 1308, 1311 (2d Cir.1992); October 11, 1991 Memorandum & Order, 777

F.Supp. 1127, 1128 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); October 9, 1991 Memorandum & Order, 777 F.Supp. 1123, 1125 (S.D.N.Y.1991); August 14, 1991 Memorandum & Order, *slip opinion*, at 4 1991 WL 161084 (S.D.N.Y.1991); July 31, 1991 Memorandum & Order, *slip opinion* at 3–4, 1991 WL 150226 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); July 18, 1991 Memorandum & Order, *slip opinion* at 3–4, 1991 WL 136030 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); July 16, 1991 Opinion & Order, *slip opinion*, at 3–4, 1991 WL 136029 (S.D.N.Y.1991); June 6, 1991 Opinion & Order, 775 F.Supp. 90, 93 (S.D.N.Y.1991), *aff'd in part, rev'd in part*, 948 F.2d 1278 (2d Cir.1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y.1991); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 800 (S.D.N.Y.1991) *aff'd*, 956 F.2d 1161 (2d Cir.1992); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.1991), *aff'd*, 940 F.2d 648 (2d Cir.1991), *cert. denied*, 496 U.S. 925, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92 (S.D.N.Y.1990); January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, *aff'd*, 907 F.2d 277 (2d Cir. 1990).

■ The Independent Administrator's decision was neither arbitrary not capricious and was supported by the evidence. Reardon received his "bonus" of $300 on March 31, 1988, wrote a $300 personal check to the Johnson campaign on April 5, 1988, and cashed his bonus check on April 8, 1988. Thus, within days of receiving his $300 bonus he wrote a check to the Johnson campaign in the same amount. Even though Reardon may have contributed to political campaigns in the past, the timing and the amount of this "bonus" and "contribution" provide a solid foundation from which to conclude that Reardon participated in the illegal campaign contribution scheme.

Reardon next argues that he testified forthrightly before the Independent Administrator. This Court will not substitute its assessment of the credibility for that of the Independent Administrator—who conducted Reardon's disciplinary hearing and was in the best position to judge his credibility—unless the Independent Administrator's judgement is arbitrary and capricious. February 11, 1992 Memorandum & Order, 787 F.Supp. 345, 351 (S.D.N.Y.1992); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1133 (S.D.N.Y.1991). The Independent Administrator did not find Reardon's testimony about the embezzlement scheme credible. (Ind.Admin.Dec. at p. 17). Given Reardon's self-interest in the outcome of the proceeding and the documentary evidence against him, this finding was neither arbitrary nor capricious.

■ Finally, Reardon argues that the Government improperly converted a violation of a Wisconsin campaign law into a violation of 29 U.S.C. § 501(c) in the Vandenbergen case. Reardon points out that this issue is being argued in Vandenbergen's appeal of his conviction to the Seventh Circuit. Second, Reardon argues that the campaign contribution could not have violated 29 U.S.C. § 501(c) because it was in the best interests of the Union.

The flaw with these arguments is that Reardon is not objecting here to a conviction under 29 U.S.C. § 501(c) in a criminal action. Rather, he is objecting to the Independent Administrator's findings that he violated Article XIX, Section 6(b)(2) and (3), and Article II, Section 2(a) of the IBT Constitution in an internal IBT disciplinary proceeding. The Independent Administrator found that Reardon (1) acted with fraudulent intent to deprive Local 563 of its funds when he participated in the illegal campaign contribution scheme, *see* Article XIX, Section 6(b)(3) of the IBT Constitution, and (2) brought reproach upon the IBT by taking part in the scheme, *see* Article XIX, Section 6(b)(2) and Article II, Section 2(a) of the IBT Constitution. As discussed above, these findings were neither arbitrary nor capricious and were fully supported by the evidence. The disciplinary power vested in the Independent Administrator by the Consent Decree "plainly include[s] the power to interpret the disciplinary provisions of the IBT Constitution." *U.S. v. IBT*, 905

F.2d 610, 619 (2d Cir.1990). Moreover, the Independent Administrator's "comprehensive right to review disciplinary charges of the GEB necessarily includes the final authority to determine what constitutes an offense subject to discipline under the IBT Constitution." *Id.* Accordingly, the Independent Administrator has the authority to conclude that Reardon committed embezzlement and thereby brought reproach upon the IBT in violation of the IBT Constitution regardless of what the Seventh Circuit finds. Reardon's arguments are meritless.

■ In addition, whether or not the Seventh Circuit finds that Vandenbergen's scheme violated 29 U.S.C. § 501(c), Reardon's participation in a scheme to violate a Wisconsin campaign contribution law is sufficient to support a finding that he brought reproach upon the IBT in violation of Article XIX, Section 6(b)(2) and Article II, Section 2(a) of the IBT Constitution. An IBT official's participation in a scheme to violate a State's campaign contribution law, whether or not the official believes his or her actions to be in the "best interests" of the Union, tarnishes the reputation of the IBT. No matter what an IBT official might think, participation in a scheme to violate a law—whether federal, state, or local—is not in the best interests of the Union. Using an IBT Local as a vehicle to funnel illegal campaign contributions brings reproach upon the IBT and smacks of the hideous influence of organized crime this Consent Decree was designed to eradicate.

As the record in this case makes clear, Reardon participated in a scheme to make illegal campaign contributions. By doing so, he brought reproach upon the IBT in violation of Article XIX, Section 6(b)(2) and Article II, Section 2(a) of the IBT Constitution.

### B. The Penalty

■ Reardon argues in the alternative that his penalty is too severe. The Independent Administrator took a number of mitigating circumstances into account in imposing a two year suspension, including Reardon's role in the scheme and the small amount of money involved. Under the totality of the circumstances, the imposition of a two year suspension was neither arbitrary nor capricious.

### C. Motion for a Stay

■ Reardon requests a stay pending the outcome of the Seventh Circuit's decision of Vandenbergen's appeal. In this circuit, the standards for issuing a stay encompass the following considerations: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure other parties interested in the proceedings; and (4) where the public interest lies. *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). Applying these criteria to the instant application, I find that Reardon fails to meet the requirements for a stay.

■ First, Reardon has not made a strong showing that he is likely to succeed on the merits. There was ample evidence to support the Independent Administrator's findings with respect to Reardon's involvement in the illegal campaign contribution scheme. Moreover, as discussed above, the Seventh Circuit's decision will have no effect on the Independent Administrator's findings. Second, Reardon does not allege that he will face any irreparable harm, and I find that he will face no irreparable harm from the penalty imposed. Third, the general public and the IBT will be injured by the issuance of a stay. In cases involving the Government as a litigant, "once the Government demonstrates a reasonable probability [of success on the merits], irreparable harm to the public should be presumed." *United States v. Siemens Corp.,* 621 F.2d 499, 506 (2d Cir.1980); *see SEC v. Unifund SAL,* 910 F.2d 1028, 1039 (2d Cir.1990). The Investigations Officer has not only shown a probability of success on the merits, but has succeeded before both the Independent Administrator and this Court. Accordingly, this Court presumes

injury to the general public. In addition, granting a stay will prejudice the IBT. The Consent Decree embodies "a systematic mechanism to achieve reforms throughout the IBT." *United States v. IBT*, 905 F.2d 610, 613 (2d Cir.1990). The goals under the disciplinary provisions of the Consent decree include "protecting the image of the IBT, maintaining Union integrity, and fostering public confidence in the IBT." June 6, 1991 Opinion & Order, 775 F.Supp. 90, 96 (S.D.N.Y.1991), *aff'd in part, rev'd in part*, 948 F.2d 1278 (2d Cir.1991). A stay will serve only to tarnish the image of the IBT, impugn the Union's integrity, and undermine public confidence. Finally, the public interest lies in furthering the remedial goals of the disciplinary provisions of the Consent Decree. Accordingly, Reardon's application for a stay is denied.

### III. CONCLUSION

IT IS HEREBY ORDERED that Reardon's objections to the Independent Administrator's decision are denied; and

IT IS FURTHER ORDERED that the decision of the Independent Administrator is affirmed in its entirety; and

IT IS FURTHER ORDERED that the stay of penalties imposed by the Independent Administrator is dissolved, effective immediately; and

IT IS FURTHER ORDERED that Reardon's request for a stay is denied.

SO ORDERED.