**UNITED STATES of America, Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

**In re APPLICATION LXIV OF the INDEPENDENT ADMINISTRATOR.**

**No. 88 Civ. 4486 (DNE).**

United States District Court, S.D. New York.

Feb. 11, 1992.

Charles M. Carberry, Investigations Officers of Intern. Broth. of Teamsters (Theodore L. Hecht, of counsel), New York City.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Steven C. Bennett, Asst. U.S. Atty., of counsel), for U.S.

Spivak, Lipton, Watanabe & Spivak, New York City (Frank K. Moss, of counsel), for

respondents Duane Wilson, Michael H. Dickens and Jack Weber.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions. Pursuant to paragraph F.12(C) of the Consent Decree, the Independent Administrator must decide disciplinary hearings using a "just cause" standard.

Application LXIV presents for this Court's review the decision of the Independent Administrator finding that the Investigations Officer proved three charges filed against the following three officers of IBT Local Union 100 in Evendale, Ohio: (1) Duane Wilson, a Business Agent; (2) Michael H. Dickens, the President; and (3) Jack Weber, the Secretary Treasurer (collectively the "Respondents"). Specifically, the Independent Administrator found that Wilson assaulted Anthony Hooks, the Vice President of Local 100. The Independent Administrator also found that Dickens and Weber embezzled approximately $5,600 from Local 100.

## I. BACKGROUND

### A. *Wilson*

The Investigations Officer charged Wilson with violating Article II, Section 2(a) and Article XIX, Sections 6(b)(2) and (6) of the IBT Constitution for assaulting an Officer of Local 100, Anthony Hooks, on the premises of Local 100. Section 2(a) is the IBT membership oath, which provides in relevant part that every IBT member shall "conduct himself or herself in a manner so as not to bring reproach upon the Union ... [and shall] never knowingly harm a fellow member." Section 6(b) is a nonexhaustive list of disciplinary charges that may be filed against IBT members. Two such charges are: (1) violating the IBT membership oath; and (2) "assaulting ... fellow members or officers ... or any similar conduct in, or about Union premises or places used to conduct Union business." Article XIX, §§ 6(b)(2), 6(b)(5).

On the evening of March 20, 1991, it is undisputed that Hooks was meeting with trustees of the Local at the Union Hall in connection with an audit of the Local's books. Wilson and Weber were downstairs in a meeting room eating pizza and drinking beer. The subject of audits had become a point of controversy between different factions vying for financial control of the Local. Wilson and Hooks were on different sides of this dispute. At the time, Wilson also opposed Hooks in the election for delegates to the 1991 IBT Convention.

On the night of March 20, 1991, Hooks went downstairs to get sodas from the barroom. Hooks passed Wilson and Weber on the way to the barroom. Wilson followed Hooks into the barroom and accused him of upsetting IBT members who worked at the Cincinnati Association For the Blind, a Teamster employer where Wilson was assigned as a Business Agent.

Wilson and Hooks offer different accounts of what happened next. Wilson and Weber testified that Hooks shoved Wilson in the chest and a fight ensued. Hooks testified that Wilson punched him in the face while he was looking in a different direction. According to Hooks, as he tried to flee, Wilson chased, kicked, and repeatedly punched him. When Hooks ran out of the building, Wilson knocked him down, kicked him off a loading dock, and then chased him across the parking lot,

finally knocking him to the ground. At that point, Weber told Wilson to stop, and the attack ended.

It is undisputed that the police then arrived at the scene and arrested Wilson and Weber for the assault. Hooks was treated that night at an emergency room. According to medical records, Hooks had many areas of tenderness on the right side of his face, neck, arm, and shoulder, contusions to the arm and chest, and abrasions on his left knee where he had fallen. Hooks filed criminal charges against Weber and Wilson, and Wilson subsequently filed a criminal charge against Hooks. Wilson's charge against Hooks was dismissed.

A trial was held before a Magistrate Judge on the charges against Wilson and Weber. The criminal action against Weber was dismissed on motion. Wilson was found not guilty after a bench trial. At the conclusion of the trial, after acquitting Wilson, the Magistrate Judge stated, "Teamsters should handle their own matters and disagreements of the Union."

The Independent Administrator found that all the evidence corroborated Hooks' version of events. Accordingly, the Independent Administrator found that the Investigations Officer had met his burden and established "just cause" that Wilson assaulted Hooks in violation of Article XIX, Section 6(b)(6) and Article II, Section 2(a) of the IBT Constitution. In addition, the Independent Administrator found that the assault brought reproach upon the Union in violation of Article II, Section 6(b)(2) of the IBT Constitution. In doing so, the Independent Administrator stated:

> The use of such strong arm tactics in connection with an election of International delegates and Local Union Officers, as well as in the context of an intra-Union struggle over the use of the dues payers' money, can only serve to stifle the legitimate political activity that is needed to insure that IBT Local Unions are operated with the best interest of the membership in mind.

(Ind.Admin.Dec. at 10).

## B. Dickens and Weber

The Investigations Officer charged Dickens and Weber with violating Article XIX, Sections 6(b)(1) and (2), and Article II, Section 2(a) of the IBT Constitution by "fraudulently appropriating and converting to the use of [themselves] and others, at least $5,625.00 of Local 100's money." Article XIX, Section 6(b)(2) and Article II, Section 2(a) of the IBT Constitution provide that IBT members may be disciplined for bringing reproach upon the Union in violation of the IBT membership oath. Article XIX, Section 6(b)(1) provides that an IBT member may be disciplined for "Violation of any specific provision of the Constitution, Local Union By-laws or rules of order, or failure to perform any of the duties specified thereunder." The Local Union By-law at issue here is Section 16(A) of Local 100's By-laws, which requires authorization for expenditures and contributions of Local Union funds by the Local Union Executive Board.[1]

Specifically, the Investigations Officer alleged that Dickens and Weber caused the Local to contribute $5,000 in fees and expenses for a golf outing held in Florida from October 10–14, 1990, without Executive Board approval. The Investigations Officer also charged Dickens and Weber with causing the Local to contribute $625 for a testimonial dinner for Jack Yager in December 1990, despite the Executive Board's previous refusal to approve this expenditure. Dickens and Weber do not dispute that they made the expenditures in question. They argue that the expenditures were properly authorized and, in the alternative, that they did not have the req-

---

1. Section 16(A) of the Local 100 By-laws provides:

   Except as may be otherwise provided in these By-laws, the Local Union Executive Board is authorized and empowered to conduct and manage the affairs of this organization, and to manage, invest, expend, contribute, use, borrow, lend and acquire Local Union funds and property in the pursuit of the accomplishment of the objectives set forth in the Constitution of the International Union and these By-laws and resolutions adopted in the furtherance thereof.

uisite intent to deprive the Union of its funds.

It is undisputed that the Executive Board did not approve the approximately $5,000 spent in connection with the Little Cities Golf Tournament. Dickens and Weber argued that they viewed the event as a business matter. As a result, Dickens and Wilson argued that the expenditure was proper under Section 8(c) of the Local's by-laws, which allow the President and Secretary–Treasurer to pay the Local's bills and operating expenses. Dickens testified that he and Pat Eick, a Local 100 Business Agent, conducted business in Florida during the month of October. Weber did not attend the outing, but did sign the check for it.

The Local carried the Little Cities expenditure on its books as a charitable contribution. In addition, both Dickens and Eick brought their wives with them to Florida for the week of the golf outing. In light of these facts, the Independent Administrator found Dickens' and Weber's contentions lacking in credibility.

As for the Yager dinner, Dickens contended that he discussed the matter with the Executive Board off the record and secured their approval to pay for one-half of a table if Joint Council 26 would pay the other half. Weber signed the check for the Yager dinner and also attended the dinner. The Independent Administrator found Dickens' suggestion that a matter subject to Executive Board approval would be handled off the record or prior to the Executive Board's actual meeting "implausible on its face." (Ind.Admin.Dec. at 19–20). In addition, the Independent Administrator noted that the other members of the Executive Board flatly asserted that they never approved the contribution either on or off the record. Dickens and Weber also argued that their expenditures conform to the usual practice of Local 100. The Independent Administrator rejected this argument stating that "[t]he questionable practices of prior Union officers—who were ousted by the Respondents running on a 'reform' ticket—cannot legitimize what is otherwise a clear violation of by-laws." (Ind.Admin.Dec. at 22).

After reviewing all the evidence and noting Dickens' and Weber's conflict with other members of the Executive Board, the Independent Administrator rejected Dickens' and Weber's attempt to portray themselves as naive:

> The pattern that emerges here is not one of unknowledgeable but well-meaning Union officers who are conducting Union business and making charitable contributions as well as they can, but rather two officers who seek to wield power without accountability in defiance of the by-laws and of the views of the other Executive Board members. What has occurred here is an unprincipled arrogation of power in which [Dickens and Weber] have sought total control of Local 100's finances.

(Ind.Admin.Dec. at 24). The Independent Administrator therefore found that Dickens and Weber acted with fraudulent intent in circumventing the Executive Board to secure funds for the golf outing and the Yager dinner. Accordingly, the Independent Administrator found that the Investigations Officer had proven the charges against Dickens and Weber.

## C. Penalties

The Independent Administrator suspended each of the Respondents for a period of five years from holding any IBT-affiliated Union positions and from drawing any money or compensation therefrom, or from any other IBT-affiliated source. The Independent Administrator also directed that during Respondents' suspension no further contributions are to be made on their behalf by the IBT or any IBT-affiliated source to any pension, health, welfare or any other employee plan. *See* December 28, 1990 Memorandum & Order, 753 F.Supp. 1181 (S.D.N.Y.1990). With respect to Wilson, the Independent Administrator directed that Wilson not, directly or indirectly, "interfere with, assault, threaten or take any action in any way detrimental to the rights, employment, IBT membership, benefits or other interest of Hooks or any person involved on behalf of Hooks in this

matter." In addition, the Independent Administrator directed Wilson immediately to instruct all officers, business agents, and members of Local 100 "to refrain from taking any retaliatory action against Hooks or any other person involved on behalf of Hooks in this matter."

Respondents appeal to this Court the decision of the Independent Administrator. This Court finds that the decision of the Independent Administrator is fully supported by the evidence, and that Respondents' arguments are without merit. Accordingly, the decision of the Independent Administrator is affirmed.

## II. DISCUSSION

■ Respondents make a number of common arguments and also each individually attack the Independent Administrator's assessment of the evidence against him. In reviewing the disciplinary charges against Respondents, the findings of the Independent Administrator "are entitled to great deference." *United States v. IBT*, 905 F.2d 610, 616 (2d Cir.1990), *aff'g* March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y.1990). This Court will overturn the findings of the Independent Administrator when it determines that they are, on the basis of all the evidence, "arbitrary or capricious." *United States v. IBT*, 905 F.2d at 622; January 28, 1992, Memorandum & Order, *slip opinion*, at 4, 1992 WL 18280 (S.D.N.Y.1992); January 20, 1992 Memorandum & Order, 782 F.Supp. 256, 259–260 (S.D.N.Y.1992); January 16, 1992 Memorandum & Order, 782 F.Supp. 238, 241 (S.D.N.Y.1992); November 8, 1991 Memorandum & Order, *slip opinion*, 1991 WL 243268 (S.D.N.Y.1991); October 29, 1991 Opinion & Order, 776 F.Supp. 144, 152–53 (S.D.N.Y.1991), *aff'd*, 954 F.2d 801 (2d Cir.1992); October 25, 1991, Order, *slip opinion*, at 4–5 (S.D.N.Y.1991); October 24, 1991 Memorandum & Order, 777 F.Supp. 1133, 1136 (S.D.N.Y.1991); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991); October 11, 1991 Memorandum & Order, 777 F.Supp. 1127, 1128 (S.D.N.Y.1991), · *aff'd*, 956 F.2d 1161 (2d Cir.1992); October 9, 1991 Memorandum & Order, 777 F.Supp. 1123, 1125 (S.D.N.Y.1991); August 14, 1991 Memorandum & Order, *slip opinion*, at 4, 1991 WL 161084 (S.D.N.Y.1991); July 31, 1991 Memorandum & Order, *slip opinion* at 3–4, 1991 WL 150226 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); July 18, 1991 Memorandum & Order, *slip opinion* at 3–4 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); July 16, 1991 Opinion & Order, *slip opinion*, at 3–4, 1991 WL 136029 (S.D.N.Y.1991); June 6, 1991 Opinion & Order, 775 F.Supp. 90, 93 (S.D.N.Y.1991), *aff'd in part, rev'd in part*, 948 F.2d 1278 (2d Cir.1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y. 1991); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 800 (S.D.N.Y.1991) *aff'd*, 956 F.2d 1161 (2d Cir.1992); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y. 1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92 (S.D.N.Y. 1990); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990); March 13, 1990 Opinion & Order, *supra*, 743 F.Supp. at 159–60, *aff'd*, 905 F.2d at 622; January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, *aff'd*, 907 F.2d 277 (2d Cir.1990); November 2, 1989 Memorandum & Order, 725 F.Supp. 162, 169 (S.D.N.Y.1989).

### A. *Respondent's Common Arguments*

Respondents argue that: (1) a Local Union by-law should have governed their disciplinary hearing; (2) a "clear and convincing" standard should have been used at their disciplinary hearing; (3) the Independent Administrator's handling of the disciplinary hearing deprived them of due process; and (4) the Independent Administrator improperly relied on hearsay. These four arguments are completely without merit.

■ First, Local Union rules do not govern disciplinary hearings conducted by the Independent Administrator. *See* December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990). Second, Respondents' argument that the applicable

standard of proof at a disciplinary proceeding under the Consent Decree should be "clear and convincing" has explicitly been rejected by this Court. *Id.* The standard of proof in disciplinary hearings is "by a fair preponderance of the evidence." *Id.* Third, Respondents' due process argument must fail because the Independent Administrator's conduct in disciplinary proceedings does not constitute "state action." *United States v. IBT,* 941 F.2d 1292, 1295–96 (2d Cir.1991); *United States v. IBT,* 954 F.2d 801, 806–07 (2d Cir.1992); October 9, 1991 Memorandum & Order, 777 F.Supp. 1123, 1126 (S.D.N.Y.1991). Fourth, it is well settled that reliable hearsay may be considered by the Independent Administrator in IBT disciplinary hearings. August 27, 1990, Opinion & Order, 745 F.Supp. 908, 914 (S.D.N.Y.1990), *aff'd, United States v. IBT,* 941 F.2d 1292 (2d Cir.1991); *see* January 20, 1992 Memorandum & Order, 782 F.Supp. 256, 260 (S.D.N.Y.1992); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991). In this case, the hearsay evidence consisted of statements made under oath—statements which corroborate each other. A review of the evidence in this case reveals that the Independent Administrator's finding that this hearsay evidence was reliable is neither arbitrary nor capricious.

*B. Wilson*

Wilson argues that: (1) the dismissal of the criminal charge against him arising from the assault of Hooks is dispositive of the disciplinary charge here; and (2) the Independent Administrator improperly failed to credit his version of the events. These arguments are without merit.

■ Where an acquittal of criminal charges "represented an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.... it does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings." *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (citations omitted); *see Murphy v. United States,* 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446 (1926); *Stone v. United States,* 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127 (1897). Wilson was acquitted on criminal charges of assaulting Hooks by the Magistrate Judge because the State of Ohio failed to prove its case against Wilson beyond a reasonable doubt. IBT disciplinary hearings before the Independent Administrator are governed by the lesser standard of proving just cause by a fair preponderance of the evidence. December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y. 1990). Wilson's acquittal in the criminal action where the proof was not sufficient to prove his guilt beyond a reasonable doubt therefore does not preclude an internal IBT disciplinary hearing using a preponderance of the evidence standard based on the same conduct. Accordingly, Wilson's criminal acquittal did not preclude the finding of the Independent Administrator that the Investigations Officer had established just cause by a fair preponderance of the evidence that Wilson assaulted Hooks in violation of Article II, Section 2(a) and Article XIX, Sections 6(b)(2) and (6) of the IBT Constitution.

■ Wilson next argues that the Independent Administrator failed to credit Wilson's and Weber's "credible" testimony that Hooks started the fight by pushing Wilson in the chest. This Court will not substitute its judgment of the credibility of witnesses for that of the Independent Administrator, who conducted the disciplinary hearings and was thus in the best position to judge credibility, unless his determination is arbitrary and capricious. October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1133 (S.D.N.Y.1991). In essence, Wilson argues that the Independent Administrator improperly found Hooks' version of events credible. The Independent Administrator carefully considered the evidence and found that Hooks' version of events was corroborated by the statements of neutral non-IBT members, such as the arresting officer, the Police Chief, and the Emergency Room Physician. In addition, the Independent Administrator found that Wilson's version of events did not adequately account for Hooks' injuries and

failed to adequately explain why he followed Hooks into the barroom to initiate the confrontation. This determination by the Independent Administrator is fully supported by the record and is neither arbitrary nor capricious.

## C. Weber and Dickens

■ Weber and Dickens argue that the Independent Administrator's finding that they acted with fraudulent intent is arbitrary and capricious. At the heart of the charge against Weber and Dickens is embezzlement. It is well settled that for the Investigations Officer to prove a charge of embezzlement, he must establish that the charged IBT member acted with "fraudulent intent to deprive the Union of its funds." December 27, 1990 Opinion & Order, 754 F.Supp. 333, 338 (S.D.N.Y.1990); see June 6, 1991 Opinion & Order, 775 F.Supp. 90, 93 (S.D.N.Y.1991), aff'd in part, rev'd in part, 948 F.2d 1278 (2d Cir.1991). Circumstantial evidence can be used to prove intent. United States v. IBT Local 560, 780 F.2d 267, 284 (3rd Cir.1985). Moreover, "[i]f an individual fails to act when he has an affirmative duty to do so, negative inferences concerning his intent can be drawn from his inaction." Id. at 284.

The evidence clearly demonstrated that the expenditures were made without Executive Board approval in violation of Section 16(A) of the Local's by-laws. Dickens and Weber had an affirmative duty to obey their oath of office and to obey Section 16(a) of the by-laws. Dickens' and Weber's failure to comply with Section 16(a) gives rise to an inference of fraudulent intent. After carefully reviewing the evidence, the Independent Administrator found that Dickens and Weber were well aware of the by-law's requirement that they obtain Executive Board approval for the contributions in question. Given Dickens' and Weber's conflict with other members of the Executive Board, the Independent Administrator found that they sought to bypass the Executive Board "in matters where it was obvious that their own personal entertainment was mixed with ostensible business or charitable activity." (Ind.Admin.Dec. at

25). Given Dickens' and Weber's failure to comply with Rule 16(A), their conduct, and their conflict with other members of the Executive Board, the Independent Administrator's finding that they acted with fraudulent intent was neither arbitrary nor capricious.

## D. Wilson's Penalty

■ This Court has held that strong-arm tactics in connection with Union affairs "warrants nothing less than permanent suspension from the IBT." January 20, 1992 Memorandum & Order, 782 F.Supp. 256, 260–61 (S.D.N.Y.1992). Wilson's attack on Hooks is "precisely the kind of strong-arm tactic that the Court-appointed officers are charged with eradicating." Id. Attacks such as this send "a message to IBT members that political expression or challenge is dangerous. As such, [they have] a chilling effect on the free exercise of political rights guaranteed to all IBT members under federal labor law as well as the Consent Decree." Id. (citation omitted). Those, such as Wilson, who use violence as a form of political expression have no place in this Union. This Court therefore imposes on Wilson a lifetime suspension from the IBT.

## III. CONCLUSION

IT IS HEREBY ORDERED that Respondents' objections to the Independent Administrator's decision are denied.

IT IS FURTHER ORDERED that the decision of the Independent Administrator is modified to imposed upon Wilson a lifetime suspension from the IBT, and as so modified, the opinion of the Independent Administrator is affirmed.

IT IS FURTHER ORDERED that the stay of penalties imposed on Respondents by the Independent Administrator is dissolved, effective immediately.

SO ORDERED.