UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION XCI OF THE INDEPENDENT ADMINISTRATOR.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Dec. 10, 1992.

See also, 808 F.Supp. 276, 808 F.Supp. 271.

Charles M. Carberry, Investigations Officer of Intern. Broth. of Teamsters (Theodore L. Hecht, Celia A. Zahner, of counsel), Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Christine H. Chung, Asst. U.S. Atty., of counsel), for U.S.

Slotnick & Baker, New York City (Barry I. Slotnick, Michael Shapiro, of counsel), for respondent Bernard Adelstein.

## OPINION & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America (the "Government") against defendants International Brotherhood of Teamsters (the "IBT" or the "Union") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The Consent Decree provides for three Court-appointed officials: the Independent Administrator to oversee the Consent Decree's remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers. The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and disciplinary provisions.

Application XCI presents for this Court's review the decision of the Independent Administrator finding that the Investigations Officer had proven that Bernard Adelstein, Secretary–Treasurer of IBT Local 813, President of IBT Local 1034, and Secretary–Treasurer of the Executive Board of IBT Joint Council 16, brought reproach upon the Union by knowingly associating with a member of La Cosa Nostra.

## BACKGROUND

The Investigations Officer alleges that Mr. Adelstein violated Article II, Section 2(a) and Article XIX, Section 6(b) of the IBT Constitution by knowingly associating with James ("Jimmy Brown") Failla, a member of La Cosa Nostra. Article II, Section 2(a) is the IBT membership oath, which provides in relevant part that every IBT member shall "conduct himself or herself in a manner so as not to bring reproach upon the Union." Article XIX, Section 6(b) is a non-exhaustive list of disciplinary charges that may be filed against IBT members. One such charge is violating the IBT membership oath. *See* Article XIX, § 6(b)(2).

Pursuant to paragraph F.12(C) of the Consent Decree, the Independent Administrator must decide disciplinary hearings using a "just cause" standard. The Investigations Officer has the burden of establishing just cause by a preponderance of the evidence. December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990). After receiving briefs from the parties to this action and conducting a hearing at which Mr. Adelstein was represented by counsel, the Independent Administrator issued a twenty-six page decision. The Independent Administrator found that the Investigations Officer had sustained his burden of proving that Mr. Adelstein "knowingly associated" with Mr. Failla.

As a penalty for this conduct, the Independent Administrator found that Mr. Adelstein should be permanently banished from the IBT,[1] stating that "Adelstein's associations with the underworld are repugnant. ... Only by cleansing the IBT of the likes of Adelstein can the Union ever hope to function as a corruption-free, democratic organization." Ind.Admin.Dec. at 23. Furthermore, the Independent Admin-

---

**1.** It should be noted that Mr. Adelstein has indicated that he retired from the IBT on September 7, 1992. *See Brief of Respondent Bernard Adelstein* at 28. The issue of Mr. Adelstein's permanent removal from the Union is not moot, however, because in the absence of an order to the contrary, nothing would prevent Mr. Adelstein from rejoining the IBT or any IBT Local.

istrator exercised his authority to impose sanctions upon Mr. Adelstein's employee benefits. *See* December 28, 1990 Memorandum & Order, 753 F.Supp. 1181 (S.D.N.Y.1990), *aff'd*, 941 F.2d 1292 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991). The Independent Administrator prohibited the IBT or any affiliate from contributing funds on Mr. Adelstein's behalf to any Third–Party plan of which Mr. Adelstein is a member. Moreover, the Independent Administrator directed that the IBT or IBT-affiliated entities not make payment of any benefits to Mr. Adelstein (including, bonuses and Local-controlled severance plans). Finally, the Independent Administrator ordered that the IBT and IBT-affiliated entities refrain from contributing to Mr. Adelstein's attorney's fees in connection with the instant disciplinary action.

Mr. Adelstein appeals to this Court the opinion of the Independent Administrator. This Court finds that the opinion of the Independent Administrator is fully supported by the evidence, and that Mr. Adelstein's arguments are devoid of merit. Accordingly, the opinion of the Independent Administrator is affirmed in all respects.

## DISCUSSION

 In reviewing decisions of the Independent Administrator, it is well settled that the findings of the Independent Administrator "are entitled to great deference." *United States v. IBT,* 905 F.2d 610, 616 (2d Cir.1990), *aff'g* March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y. 1990). This Court will overturn the findings of the Independent Administrator when it determines that they are, on the basis of all the evidence, "arbitrary or capricious." *United States v. IBT,* 964 F.2d 1308, 1311 (2d Cir.1992); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990), *aff'd,* 941 F.2d 1292 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991); March 13, 1990 Opinion & Order, 743 F.Supp. 155, 165 (S.D.N.Y.1990), *aff'd,* 905 F.2d 610 (2d Cir. 1990); *see* July 14, 1992 Opinion & Order, 803 F.Supp. 748, 756–57 (S.D.N.Y.1992); July 13, 1992 Opinion & Order, 803 F.Supp.

740, 747–48 (S.D.N.Y.1992); July 9, 1992 Opinion & Order, *slip opinion,* at 6–8, 1992 WL 172229 (S.D.N.Y.1992); May 15, 1992 Opinion & Order, 792 F.Supp. 1346, 1352 (S.D.N.Y.1992); April 27, 1992 Memorandum & Order, 791 F.Supp. 421, 425–26 (S.D.N.Y.1992); February 11, 1992 Memorandum & Order, 787 F.Supp. 345, 350 (S.D.N.Y.1992); January 20, 1992 Memorandum & Order, 782 F.Supp. 256, 259 (S.D.N.Y.1992); January 16, 1992 Memorandum & Order, 782 F.Supp. 238, 241–42 (S.D.N.Y.1992); November 8, 1991 Memorandum & Order, 948 F.2d 1338, 1343–44 (S.D.N.Y.1991); October 29, 1991 Opinion & Order, 776 F.Supp. 144, 152–53 (S.D.N.Y. 1991), *aff'd,* 954 F.2d 801 (2d Cir.1992), *cert. denied,* — U.S. —, 112 S.Ct. 2993, 120 L.Ed.2d 870 (1992); October 25, 1991, Order, *slip opinion,* at 4–5 (S.D.N.Y.1991); October 24, 1991 Memorandum & Order, 777 F.Supp. 1133, 1136 (S.D.N.Y.1991); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991), *aff'd,* 964 F.2d 1308 (2d Cir.1992); October 11, 1991 Memorandum & Order, 777 F.Supp. 1127, 1128 (S.D.N.Y.1991), *aff'd,* 956 F.2d 1161 (2d Cir.1992); October 9, 1991 Memorandum & Order, 777 F.Supp. 1123, 1125 (S.D.N.Y.1991); August 14, 1991 Memorandum & Order, *slip opinion,* at 4, 1991 WL 161084 (S.D.N.Y.1991); July 31, 1991 Memorandum & Order, *slip opinion,* at 3–4, 1991 WL 150226 (S.D.N.Y.1991), *aff'd,* No. 91–6200, 956 F.2d 1161, (Table) unpublished slip op. (2d Cir. Sep. 12, 1991); July 18, 1991 Memorandum & Order, *slip opinion* at 3–4, 1991 WL 136030 (S.D.N.Y.1991), *aff'd,* No. 91–6198, 956 F.2d 1161, (Table) unpublished slip op. (2d Cir. Sep. 12, 1991); July 16, 1991 Opinion & Order, *slip opinion,* at 3–4, 1991 WL 136029 (S.D.N.Y. 1991); June 6, 1991 Opinion & Order, 775 F.Supp. 90, 93 (S.D.N.Y.1991), *aff'd in relevant part,* 948 F.2d 1278 (2d Cir.1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y.1991); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 800 (S.D.N.Y.1991) *aff'd,* No. 91–6144, 956 F.2d 1161, unpublished slip op. (2d Cir. Jan. 28, 1992); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.),

*aff'd,* 940 F.2d 648 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y. 1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92 (S.D.N.Y. 1990); January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, *aff'd,* 907 F.2d 277 (2d Cir.1990).

■ Mr. Adelstein argues that the Independent Administrator's decision was arbitrary and capricious because the Independent Administrator considered hearsay evidence in reaching his decision. However, it is beyond reasonable dispute that "hearsay evidence, if reliable, is admissable in IBT disciplinary proceedings." *United States v. IBT,* 777 F.Supp. 1130, 1133 (S.D.N.Y. 1991) (*citing United States v. IBT,* 745 F.Supp. 908, 914–15 (S.D.N.Y.1990), *aff'd,* 941 F.2d 1292, 1297 (2d Cir.1991)). The Independent Administrator carefully considered the hearsay statements in the instant case and found them reliable in that they corroborated each other. An examination of the relevant statements supports this finding. Accordingly, this Court finds that the Independent Administrator's admission of hearsay statements does not render his decision arbitrary and capricious.

■ Mr. Adelstein's next argument is wholly untenable. "Adelstein respectfully request [sic] reconsideration of the court's prior ruling in light of the Second Circuit's silence, even with ample opportunity, to uphold the notion that the Consent Decree binds non-signatory local affiliates...." *Brief of Respondent Bernard Adelstein* at 19. The Court can only speculate as to whether Mr. Adelstein's attorneys actually researched this point before incorporating it into their brief. Aside from the syntactical and grammatical flaws that permeate this section of Mr. Adelstein's brief, what is most incredible about Mr. Adelstein's argument is that the Second Circuit *repeatedly* has upheld this Court's finding that the Consent Decree does bind local affiliates of the IBT. *See, e.g., United States v. IBT,* 964 F.2d 180, 183 (2d Cir. 1992) ("We have previously recognized that some entities have sufficient relationships to the IBT to be bound by the Consent Decree. We have ruled that IBT affiliates are bound because their interests were adequately represented by the IBT ... and that an officer of an IBT local was bound by the disciplinary mechanism of the Consent Decree."); *United States v. IBT,* 931 F.2d 177, 180, 186–87 (2d Cir.1991) ("[w]e conclude that the Affiliates are bound by the Consent Decree[ ] ... because the IBT was an adequate representative of the collective IBT membership"); *United States v. IBT,* 905 F.2d 610, 622 (2d Cir.1990) (local IBT officer "bound by the terms of the disciplinary mechanism set in place by the Consent Decree"). Thus, Mr. Adelstein is bound by the disciplinary provisions of the Consent Decree.

■ Finally, Mr. Adelstein argues that the Independent Administrator's decision was arbitrary and capricious because the evidence adduced at the hearing does not show that Mr. Adelstein brought reproach on the Union by knowingly associating with Mr. Failla. In fact, the evidence adduced at Mr. Adelstein's hearing amply supports the Independent Administrator's finding in this regard. Mr. Adelstein does not challenge the Independent Administrator's findings that he associated with Mr. Failla or that he knew of Mr. Failla's ties to La Cosa Nostra. Rather, Mr. Adelstein argues that his meetings with Mr. Failla were motivated by a legitimate purpose because Mr. Adelstein, as the main negotiator for IBT Local 813, was required to negotiate contracts with Mr. Failla, who was a representative of the Trade Waste Association. *See Brief of Respondent Bernard Adelstein* at 11, 13–14; Ind.Admin.Dec. at 9–10.

The record clearly supports the Independent Administrator's finding that the relationship between Mr. Failla and Mr. Adelstein was collaborative, rather than adversarial, and that this relationship provided the means by which the Gambino Crime Family exerted control over IBT Local 813. Mr. Adelstein admitted to being in the company of Mr. Failla at social affairs hosted by Mr. Failla's trade association, and meet-

ing Mr. Failla at least once a month over an extended period of time in the context of events and activities other than Union negotiations. Ind.Admin.Dec. at 9–10. Former Gambino Family underboss Sam Gravano testified during the trial of *United States v. Gotti and Locascio,* 90 Cr. 1051 (ILG) (E.D.N.Y.), that Mr. Adelstein "answers directly" to Jimmy Brown, making possible Mr. Failla's control of New York City's private sanitation industry for the Gambino family. Taylor Declaration, Exhibit ("T–Ex.") L at 4362. In statements given to the FBI, Harold Kaufman, a former employee of IBT Local 813, and Peter Chiodo, former Luchese Family capo, also corroborated the "control" that Mr. Failla exercised over IBT Local 813 and Mr. Adelstein in particular. *See* T–Ex. AZ; T–Ex. J at 1. During a conversation intercepted in April 1983, then Gambino Family Head Paul Castellano stated directly that "we got control of both" Locals 813 and 282. *See* T–Ex. AV at 19. This evidence was buttressed by a conversation intercepted in June 1983 in which Luchese Family capo Salvatore Avellino discussed Mr. Adelstein's affiliation with the Gambino Family and the Gambino Family's control of IBT Local 813. *See* Adelstein Exhibit ("A–Ex.") 9 at 41–42.

Prohibited knowing association with an organized crime figure is established when contact is purposeful and not incidental or fleeting. *See* Aug. 27, 1990 Opinion & Order, 745 F.Supp. 908, 918 (S.D.N.Y.1990), *aff'd,* 941 F.2d 1292 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992). Even a cursory examination of the record demonstrates that the Independent Administrator was well within his discretion in finding that Mr. Adelstein brought reproach upon the Union by knowingly associating with Mr. Failla in violation of Article II, Section 2(a) and Article XIX, Section 6(b) of the IBT Constitution. The evidence established that Mr. Failla was a member of La Cosa Nostra. The evidence established that Mr. Adelstein engaged in a long-term relationship with Mr. Failla, beyond that required in his official capacity, and in spite of the fact that Mr. Adelstein was aware that Mr. Failla had

ties to organized crime. The evidence established that Mr. Adelstein was used by Mr. Failla to effectuate control over IBT Local 813. Despite Mr. Adelstein's protestations to the contrary, such behavior is antithetical to any standard of appropriate conduct for a Union official. Indeed, it is such conduct that has allowed organized crime to fester within the IBT. Accordingly, the Independent Administrator's findings were neither arbitrary nor capricious and the Independent Administrator's decision is therefore affirmed.

## CONCLUSION

IT IS HEREBY ORDERED that Respondent's objections to the Independent Administrator's decision are DENIED; and

IT IS FURTHER ORDERED that the decision of the Independent Administrator is AFFIRMED in its entirety.

SO ORDERED.