**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALUMINA CERAMICS, INC., Respondent.**

**No. 81–2174.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1982.

Decided Oct. 11, 1982.

state an employee who was allegedly discharged for union activities and to cease and desist from other activities said to be violative of Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* We enforce the Board's order in part.

After a careful review of the briefs and record, we are convinced that there is substantial evidence on the record as a whole to support the Board's findings that the company violated Section 8(a)(1) of the Act by interrogating employee John Sledd about his union activities, by cosigning a loan for Sledd in order to discourage his union activities, and by threatening Sledd with discipline for voicing his displeasure with the company's decision to discharge John Curtis McCool. On the other hand, we are not convinced that there is substantial evidence on the record as a whole to support the Board's finding that the company violated the Act by discontinuing beer parties for its workers because of the union campaign. Moreover, although the question is a closer one, we also find there is insufficient evidence that the company violated the Act by causing employee McCool's arrest and by discharging him because of his union activities.

The facts relating to McCool's arrest and discharge are set forth by the Board and can be briefly stated: McCool was a four-year employee of the company. He was considered a fair employee and had achieved the highest classification in his department. He participated in the union campaign to organize the company and wore a union button to work. He told his immediate supervisor that he favored the union, and the company's management was aware of his sympathies.

On April 3, 1980, a short time before the union representation election, McCool reported to work badly "hung over" after an all-night drinking bout. At 7:00 a. m., his immediate supervisor announced that it was

Andrew F. Tranovich, Abby Propis Simms, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner, N. L. R. B.

Erwin Lerten, Beverly Hills, Cal., for respondent, Alumina Ceramics, Inc.

Before HEANEY, Circuit Judge, MILLER,* Judge, and COLLINSON,** Senior District Judge.

HEANEY, Circuit Judge.

This matter is before the Court pursuant to a petition by the National Labor Relations Board for enforcement of its order requiring Alumina Ceramics, Inc., to rein-

---

* The HONORABLE JACK R. MILLER, Judge for the United States Court of Customs and Patent Appeals, sitting by designation.

** The HONORABLE WILLIAM R. COLLINSON, Senior District Judge for the United States District Court for the Western District of Missouri, sitting by designation.

time to start work. McCool responded, "F___ you," and gave him "the bird." As the employees proceeded into the plant, Hester, the supervisor, asked if anyone had a cigarette. McCool responded, "Someone give this man a cigarette or he'll fire you." Sledd then gave Hester a cigarette.

As a result of his drinking, McCool did not look very well, and Hester talked to McCool about his condition as McCool was leaving the breakroom. Hester told McCool to go home and to return to work only after he felt better. Instead, McCool went to the ball mill area, his work place, and began his job for the day. Together with Sledd, McCool loaded the number three ball mill. This task involved hoisting three or four 500-pound barrels to the top of a platform, about fifteen to twenty feet off the ground, and emptying the barrels into the mill.

Before the 8:30 a. m. break, Hester encountered McCool in the ball mill area. They again discussed McCool's going home. At this point, McCool agreed with Hester that he wasn't feeling well enough to work and said that he would go home. McCool then went to the breakroom.

Hester subsequently met Jim Hobbs, the company's director of manufacturing, and reported to Hobbs his account of the events of that morning concerning McCool. Hester told Hobbs that McCool was drunk and insubordinate to him, that Hester had instructed McCool to leave twice, and that McCool had given him the "finger." Hobbs then suggested that they check to see if McCool had left the breakroom. Hester and Hobbs found McCool in the breakroom eating a sandwich. Hobbs asked McCool whether he had been asked to leave. McCool responded, "Yes, okay," and left.

Hobbs called the police shortly thereafter and reported that he had sent a drunk employee home and that this employee was driving a truck. McCool was then stopped by the police on his way home. The police officer administered a "breathalizer" test to determine if McCool was driving under the influence of alcohol. When the results indicated that McCool was not intoxicated within the meaning of the Arkansas statute, McCool was released.

At approximately 9:00 a. m., Hobbs requested that Hester meet with company president Holiman to discuss the events involving McCool. Hester repeated his account of what had occurred that morning. Hobbs raised the issue of what discipline would be appropriate and recommended that McCool be fired. Holiman agreed. After Hobbs and Holiman expressed their views, Hester also concurred in their recommendation. Holiman then stated that he would deliberate on the matter.

About 10:30 a. m., Holiman decided to fire McCool. Holiman notified McCool that he was being fired by phone at lunchtime. He told McCool that he was being fired because of his "insubordination and being drunk on company property." McCool was the first employee ever to be disciplined or discharged for reporting to work "hung over" or for being insubordinate.

In *Mead & Mount Construction Co. v. N. L. R. B.,* 411 F.2d 1154 (8th Cir. 1969), we restated the standards to be followed by the Board in discharge cases, particularly when there is some evidence tending to show that an employee's discharge was motivated by union activities and other evidence tending to show that it was unrelated to those activities: [1]

(1) The General Counsel has the burden of proving by a fair preponderance of the evidence that the employee was discharged for his union activities or membership—that but for his union activities or membership, he would not have been discharged.

(2) This burden can be satisfied by direct or circumstantial evidence.

(3) The Board, in reaching its decision, is permitted to draw reasonable inferences, and to choose between fairly conflicting views of the evidence. It cannot rely

---

1. We would reach the same result if we were to apply the standard applied by the Board. *See Wright Line, a Division of Wright Line, Inc.,* 251 NLRB 1083, 105 LRRM 1169 (1980), *enforced,* 662 F.2d 899 (1st Cir. 1981).

 

on "suspicion, surmise, implications, or plainly incredible evidence." *Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 484, 71 S.Ct. 456, 462, 95 L.Ed. 456 (1951). *Id.* at 1157 (footnotes omitted).

In our view, the General Counsel has not sustained his burden regarding McCool's discharge. The evidence shows that the company had good reason to discharge McCool. He disobeyed a clear order to go home, and instead he went into the plant and attempted to do his regular work, work which was dangerous not only to himself but to his fellow employees. Reporting to work intoxicated or "hung over"' and talking back to the foreman alone might not be grounds for discharge in view of the testimony that such practices were condoned by the company, but McCool's serious insubordination is another matter.

Upon review of the record, we believe that McCool would have been discharged for this insubordination even if he had not been a union member. His conduct was simply too flagrant to ignore. The company knew McCool was a union member, but there is no evidence in the record to indicate that he was particularly active. Moreover, the company had promoted other union adherents and had given wage increases to such individuals.

There remains the matter of McCool's arrest. If Hobbs had been truly concerned about McCool driving while intoxicated, he would have arranged for his transportation home rather than for his arrest. There is no evidence that the call was motivated by any anti-union animus, however, and under these circumstances, enforcement of the Board's order to reinstate McCool is unwarranted.

There is no evidence showing that the company's discontinuance of beer parties was motivated by an anti-union animus. Indeed, the company could reasonably have thought that continuance of the beer parties at the time of the campaign might be looked upon as an effort to undercut the campaign.

Accordingly, the petition for enforcement is denied with respect to employee McCool,

but is granted in all other respects. The Board's order will be modified consistent with this opinion.