UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION XC OF the INDEPENDENT ADMINISTRATOR.

No. 88 Civ. 4486 (DNE).

United States District Court,
S.D. New York.

Nov. 10, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Steven C. Bennett, Asst. U.S. Atty., of counsel), for the U.S.

Cohen, Weiss and Simon, New York City (Earl R. Pfeffer, of counsel), for Intern. Broth. of Teamsters.

### MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the volun-

tary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, an Investigations Officer to bring charges against corrupt IBT members, and an Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions.

Application XC involves an employer's rights and obligations toward members of the IBT who have been the subject of disciplinary proceedings. In his November 18, 1991 decision in Application LX, the Independent Administrator permanently barred from the IBT several former officers of IBT Local 707, including David Morris and James Buckley. The Independent Administrator found that they had knowingly associated with a member of La Cosa Nostra, Nicholas Grancio. This Court and the Second Circuit affirmed the Independent Administrator's decision. *See* January 16, 1992 Memorandum & Order, 782 F.Supp. 238 (S.D.N.Y.1992), *aff'd*, 978 F.2d 706 (2d Cir.1992).

Despite their banishment from the IBT, Mr. Buckley and Mr. Morris sought reinstatement with their employers, Mr. Buckley at Roadway Express, Inc. ("Roadway") and Mr. Morris at Yellow Freight Systems, Inc. ("Yellow Freight"). While Yellow Freight refused to allow Mr. Morris to return to work,[1] Roadway permitted Buckley to return to his job. Subsequently, between December 1991 and June 1992, correspondence was exchanged among the Independent Administrator, Mr. James T. Grady, then-IBT general counsel, Mr. James P. Hoffa, counsel for Local 707, and Mr. Daniel L. Hornbeck, general counsel for Yellow Freight. In this correspondence, these individuals requested guidance and set forth their views on the issue of whether Mr. Morris and Mr. Buckley could be reinstated. *See Application XC of the Independent Administrator,* Exhibits 4–14 (September 8, 1992). In a letter dated June 25, 1992, the Independent Administrator indicated his position that "Morris and Buckley may be removed [by the Union] from their respective seniority lists provided the Union controls those lists. In addition, I highlight the authority which would authorize an employer to fire an employee who is 'objectionable' to other employees." *Letter from Frederick B. Lacey, Independent Administrator, to Mr. John La-Francesca, Secretary–Treasurer of Local 707* (June 25, 1992) (on file in the Southern District of New York).

In a letter dated August 24, 1992, Mr. Earl R. Pfeffer of Cohen, Weiss & Simon ("CW & S"), writing on behalf of Local 707, requested "clarification of the rights and duties of the parties." *Letter from Earl R. Pfeffer, counsel for Local 707, to Judge David N. Edelstein* (August 24, 1992) (on file in the Southern District of New York). CW & S first requested a clarification of its own duties concerning Mr. Morris. It contends that because it has a duty under federal labor law to provide fair representation to all employees in a given bargaining unit, and because Morris' claim for reinstatement under the IBT's collective bargaining agreement with Yellow Freight has merit, CW & S is obligated to represent Mr. Morris at the grievance hearing. As to Mr. Buckley and Mr. Morris, CW & S requested clarification on behalf of the Executive Board of Local 707 in light of possible disciplinary action against Local 707's Executive Board in the event that it refuses to diminish Mr. Buckley's and Mr. Morris' seniority rights. *Letter from Frederick B. Lacey, Independent Administrator, to Charles M. Carberry, Investigations Officer* (August 12, 1992) (on file in the Southern District of New York).

The Independent Administrator requests an order from this Court that:

(1) In the event IBT Local 707 controls Morris' and Buckley's seniority lists, the Local may remove Morris and Buckley from those lists given their banishment from the IBT for knowingly associating with a member of the LCN; and

---

[1] Mr. Morris has filed a grievance challenging Yellow Freight's decision.

(2) Morris' and Buckley's employers may discharge them from their employment if the employers find them to be objectionable to their co-workers.

*Application XC of the Independent Administrator*, at 13–14 (September 8, 1992).

### Discussion

■ The National Labor Relations Act ("NLRA") prohibits an employer or a union from discriminating against an employee who has been denied union membership. 29 U.S.C. § 158(b)(2). It is clear that the NLRA prohibits discrimination based upon non-membership. *See N.L.R.B. v. United Marine Division, Local 333, Nat'l Maritime Union*, 417 F.2d 865, 866–67 (2d Cir. 1969). Nevertheless, it is equally clear that a union may diminish a former member's seniority rights without committing an unfair labor practice in violation of the NLRA.

■ In *N.L.R.B. v. International Union of Operating Engineers, Local 18*, 555 F.2d 552, 553–54 (6th Cir.1977), the court found that a union did not violate Section 158(b)(2) when it diminished the seniority rights of a member who attempted to sabotage an ongoing union election. Similarly, in *Philadelphia Typographical Union No. 2*, 189 N.L.R.B. 829 (1971), the National Labor Relations Board (the "Board") found that a union did not violate the NLRA when it removed from its seniority lists and requested that an employer terminate a union member who embezzled $35,000 from the union treasury. In each of these cases, the tribunals found that the unions acted properly because in diminishing seniority rights, they were motivated not by the individuals' status as non-members, but by their misconduct. Thus, a union may lawfully diminish or terminate a former member's seniority rights in response to misconduct. In this case, Mr. Morris and Mr. Buckley knowingly associated with a high ranking member of organized crime. In response to such egregious wrongdoing, Local 707 may, to the extent it controls the seniority system at Roadway and Yellow Freight, modify Mr. Morris' and Mr. Buckley's seniority status.

■ In addition, Morris' and Buckley's employers may discharge them from their employment if the employers find them to be objectionable to their co-workers. While under the NLRA, it is an unlawful labor practice to discriminate on the basis of non-membership, federal labor law does not preclude employers from discharging employees for legitimate reasons. *Cf. N.L.R.B. v. Future Ambulette, Inc.*, 903 F.2d 140, 143 (2d Cir.1990) (employer may discharge employee for legitimate motive); *Abbey's Transp. Serv., Inc. v. N.L.R.B.*, 837 F.2d 575, 579 (2d Cir.1988) (same); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (Title VII plaintiff's "profound inability" to get along with co-workers was legitimate nondiscriminatory reason for discharge). Consistent with the NLRA, an employer may fire unionized employees who are objectionable to their co-workers. *See Sheet Metal Workers Int'l Ass'n, Local 67*, 201 N.L.R.B. 1050 (1973). In this case, twenty-three Roadway employees and Local 707 members signed a letter, dated September 4, 1992 and addressed to the Independent Administrator, in which they object to the continued employment of Mr. Buckley. *See Letter from 23 Roadway employees and Local 707 members to Frederick B. Lacey, Independent Administrator* (September 4, 1992) (on file in the Southern District of New York). Roadway's and Yellow Freight's legitimate interest in maintaining a harmonious work environment, preventing labor unrest, and in not employing individuals with ties to organized crime, justifies their refusal to reinstate Mr. Morris and Mr. Buckley.

■ Moreover, Local 707 is not required to support the continued employment of either Mr. Morris or Mr. Buckley. The Local's duty under the NLRA does not extend to offering blind support for former union officials who are removed from office and banished from the IBT due to organized crime connections. In *International Alliance of Theatrical Stage Employees, Local No. 7*, 254 N.L.R.B. 154 (1981), the Board noted an exception to the general rule that prohibits a union from encouraging an employee's discharge. The Board found that a union may encourage discharge where such an action is "necessary to the effective performance of its

function of representing its constituency." *See also Sheet Metal Workers Int'l Ass'n, Local 67*, 201 N.L.R.B. 1050 (available on WESTLAW, FLB–NLRB database), 1973 N.L.R.B. LEXIS 312, *27 (Mar. 1, 1973) (union does not violate NLRA when it presses "upon the employer the attitude of [its] members"). In this case, Mr. Morris' and Mr. Buckley's co-workers, who are members of Local 707, object to their continued employment. *See Letter from 23 Roadway employees and Local 707 members to Frederick B. Lacey, Independent Administrator* (September 4, 1992) (on file in the Southern District of New York). It is not possible that the Union can adequately represent these members and also support Mr. Morris and Mr. Buckley. In this case, the Union has only one legitimate constituency: the current membership of Local 707, who as this Court has noted, have an "immense stake in a Union free from the insidious effect of LCN influence." May 15, 1992 Opinion & Order, 792 F.Supp. 1346 (S.D.N.Y.1992).

### Conclusion

Application XC of the Independent Administrator is granted.

SO ORDERED.