UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION CXVI OF THE INDEPENDENT ADMINISTRATOR.

No. 88 CIV. 4486 (DNE).

United States District Court,
S.D. New York.

Aug. 19, 1993.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Steven C. Bennett, Asst. U.S. Atty., of counsel), for U.S.

Cohen, Weiss and Simon, New York City (Earl R. Pfeffer, of counsel), for Intern. Broth. of Teamsters.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, an Investigations Officer to bring charges against corrupt IBT members, and an Election Officer, who supervised the electoral process that culminated in the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the influence of organized crime through the electoral and disciplinary provisions.

In Application CXVI, the Independent Administrator seeks a clarification of this Court's Memorandum & Order dated November 10, 1992. *See* November 10, 1992 Memorandum & Order, 808 F.Supp. 276 (S.D.N.Y.1992) (the "Order"). In the Order, this Court confronted a situation in which two members of IBT Local Union 707, Mr. James Buckley and Mr. David Morris, had been banished from the IBT for knowingly associating with organized crime. *See* January 16, 1992 Memorandum & Order, 782 F.Supp. 238 (S.D.N.Y.), *aff'd,* 978 F.2d 706 (2d Cir.1992). The Order discussed possible responses to the misconduct by Local 707 and the employers of Mr. Buckley and Mr. Morris, respectively Roadway Express, Inc. ("Roadway") and Yellow Freight Systems, Inc. ("Yellow Freight"). Yellow Freight banished Mr. Morris and refused to reinstate him, while Roadway rescinded its decision to banish Mr. Buckley and reinstated him. This Court found that in response to a member's misconduct, a local union could, consistent with the National Labor Relations Act ("NLRA"), 29 U.S.C. § 141 *et seq.,* diminish that member's seniority status. Order, 808 F.Supp. at 278. In addition, this Court held that "consistent with the NLRA, an employer may fire unionized employees who are objectionable to their co-workers." *Id.* (citing *Sheet Metal Workers Int'l Ass'n, Local 67,* 201 N.L.R.B. 1050, 1973 WL 4952 (1973)).

In this latest application, the Independent Administrator requests a further clarification of the Order due to Roadway's supposed confusion concerning possible responses to Mr. Buckley's employment status. In a letter dated January 8, 1993, Roadway's counsel asserted that "[g]iven the requirements of our labor contract and the NLRA, we simply perceive no basis for unilateral action by the union or the employer to deprive Mr. Buckley of work opportunity so long as he is performing duties satisfactorily." *Letter from Richard C. Hotvedt, counsel for Roadway, to Executive Board of Local 707* (January 8, 1993) ("Hotvedt Letter"). Mr. Hotvedt supported this conclusion on two sepa-

rate bases: This Court's order indicated that where a union exercises exclusive control over the employee seniority system, it may "in certain circumstances, lawfully remove an employee's seniority, thereby rendering him ineligible for employment." *Hotvedt Letter.* Because Roadway controls the seniority system, rather than Local 707, Mr. Buckley's seniority is dictated by Roadway's labor contract, which does not permit a reduction in seniority because of union disciplinary action. In the alternative, Mr. Hotvedt contended that because Mr. Buckley tendered dues to Local 707, which were not accepted, Roadway was obligated to continue Mr. Buckley's employment under Section 8(a)(3)(B) of the NLRA. Section 8(a)(3)(B) provides that:

> No employer shall justify any discrimination against an employee for nonmembership in a labor organization ... (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.

29 U.S.C. § 158(a)(3)(B).

Roadway's contention that it cannot discharge Mr. Buckley because it controls the seniority system is, in the context of this dispute, a nonsequitur. In the Order, this Court found that following the discipline of a union member, a *local union* could, to the extent it controls an employer's seniority system, reduce that member's seniority status. The Order did not purport to address the situation where an *employer* controls the seniority system, nor did it make control of the seniority system the *sine qua non* of legitimate discharge under the NLRA. Instead, this Court simply set forth a legitimate response a local union may take when one of its members is the subject of discipline.

After discussing a local union's ability to diminish seniority status, the Order set forth an employer's possible response when an employee is subject to union discipline:

> Consistent with the NLRA, an employer may fire unionized employees who are objectionable to their co-workers. In this case, twenty-three Roadway employees

and Local 707 members signed a letter, dated September 4, 1992 and addressed to the Independent Administrator, in which they object to the continued employment of Mr. Buckley. Roadway's and Yellow Freight's legitimate interest in maintaining a harmonious work environment, preventing labor unrest, and in not employing individuals with ties to organized crime, justifies their refusal to reinstate Mr. Morris and Mr. Buckley.

Order, 808 F.Supp. at 279 (citations omitted). In positing that "Judge Edelstein's [Order]" made union control of a seniority system a "pre-condition for the lawful discharge of James Buckley," Roadway disregards this section of the Order.

■ Further clarity is difficult to envision, yet the Independent Administrator's application arose from the need to provide Roadway with a more lucid exposition of this Court's position. With the passage quoted above in mind, the first salient point is that Roadway's control of the seniority system is not determinative of its ability to discharge Mr. Buckley on the ground that he is objectionable to co-workers. The Local's ability to diminish seniority status if it controls the seniority lists, and Roadway's ability to discharge Mr. Buckley due to his co-workers' views, are entirely separate issues.

In addition, because Mr. Buckley's co-workers do indeed find him objectionable, Roadway may discharge Mr. Buckley on this basis alone. In fact, the objections to Mr. Buckley's continued employment show no sign of abating. In papers supporting Application CXVI, the Independent Administrator represents that he continues "to receive correspondence from Roadway employees/Local 707 members who object to Buckley's employment with Roadway, and one employee/member has recently called the IRB Hotline with the same complaints." Application CXVI of the Independent Administrator, at 4.

■ Finally, the NLRA does not preclude Roadway from firing Mr. Buckley. Although seemingly dictated by common sense and legal precedent, Mr. Buckley's payment of dues does not insulate him from all legitimate

grounds for discharge. In the Order, this Court expressly acknowledged that while the NLRA prohibits discrimination based upon "non-membership, federal labor law does not preclude employers from discharging employees for legitimate reasons." Order, 808 F.Supp. at 278. An employer may, for instance, discharge an employee for insubordination, rudeness, instigating racial discord, advocating violence, using intoxicating substances on the job, or because of a reduction in work force or other legitimate business concern. *See, e.g., NLRB v. Alumina Ceramics, Inc.,* 690 F.2d 136, 139 (8th Cir.1982); *Fun Striders, Inc. v. NLRB,* 686 F.2d 659, 663 (9th Cir.1981); *NLRB v. Boagart Sportswear Mfg. Co.,* 485 F.2d 1203, 1209 (5th Cir.1973); *Visador Co v. NLRB,* 386 F.2d 276, 277–78 (4th Cir.1967); *Federation of Union Representatives v. NLRB,* 339 F.2d 126, 128–29 (2d Cir.1964).

Section 8(a)(3)(B) does not alter this result. The applicability of Section 8(a)(3)(B) is limited to situations where an employer has an agreement with a labor organization conditioning employment on union membership. In those cases, an employer may not seek to justify termination based upon nonmembership where reasonable grounds exist for believing that non-membership was based on a reason other than failure to pay dues. 29 U.S.C. § 158(a)(3)(B); *see N.L.R.B. v. Zoe Chem. Co.,* 406 F.2d 574, 579–81 (2d Cir. 1969). In enacting this section, "[t]he congressional aim was to eliminate the most serious abuses of compulsory unionism by abolishing the closed shop, while permitting other forms of union security to continue, thus requiring all employees to share in certain minimum financial burdens of the union." *Zoe,* 406 F.2d at 579. In this case, the issue is not whether Roadway may justify a discharge decision based upon Mr. Buckley's failure to pay dues and subsequent non-membership, but whether Roadway may discharge Mr. Buckley because he is objectionable to co-workers. Section 8(a)(3)(B) is facially inapplicable to this dispute.

A final comment is in order. Without wishing to appear excessively confident about the clarity of my Opinions, I see nothing confusing about the Order. Moreover, rudimentary research, or even a careful perusal of the statute, reveals the inapplicability of Section 8(a)(3)(B) to this matter. Had counsel bothered to indulge a careful reading of the Order and the statute, the need for this subsequent Opinion would not exist. Assuming, however, that counsel did read the Opinion and statute with a modicum of care, a more pressing concern arises: I presume that counsel for Roadway has more than a passing acquaintance with federal labor law, which calls into question whether counsel's supposed confusion about Section 8(a)(3)(B) and the Order is a valid concern or simply a method to buy Roadway time before it must make a decision concerning Mr. Buckley's continued employment.

### Conclusion

For the reasons stated above, the Independent Administrator's Application is GRANTED in its entirety.

SO ORDERED.